# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

RICHARD MARTIN LEWISTON

    Debtor.

_____/

Case No: 12-58599-pjs
Chapter 7
Honorable Phillip J. Shefferly

APARTMENTS AT CAMBRIDGE COMPANY,
L.L.C., MICKEY SHAPIRO TRUST, ASA SHAPIRO
DECLARATION OF TRUST, ILA I, L.L.C., ILA II,
L.L.C., APTCAM, L.L.C. and CAMAPT, L.L.C.,

    Plaintiffs,

vs.

RICHARD MARTIN LEWISTON,

    Defendant.

_____/

Adv. Pro. No.

## COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE
## PURSUANT TO 11 U.S.C. § 523

NOW COME Plaintiffs, Apartments at Cambridge Company, L.L.C., Mickey Shapiro Trust, Asa Shapiro Declaration of Trust, ILA I, L.L.C., ILA II, L.L.C., APTCAM, L.L.C. and CAMAPT, L.L.C., by and through their attorneys, Morganroth & Morganroth, PLLC and Sullivan, Ward, Asher & Patton, P.C., of counsel, and, for their Complaint Objecting to Debtor's Discharge Pursuant to 11 U.S.C. § 523, hereby state as follows.

## PARTIES AND JURISDICTION

1.    Plaintiff, Apartments at Cambridge Company, L.L.C. ("Apartments at Cambridge"), is a Michigan limited liability company located in the Eastern District of Michigan, Southern Division.

2.      Plaintiff, Mickey Shapiro Trust, is a Michigan trust in which the trustee, Mickey Shapiro, is a resident of the Eastern District of Michigan, Southern Division.

3.      Plaintiff, Asa Shapiro Declaration of Trust, is a Michigan trust in which the trustee, Asa Shapiro, is a resident of the Eastern District of Michigan, Southern Division.

4.      Plaintiff, ILA I, L.L.C., is a Michigan limited liability company located in the Eastern District of Michigan, Southern Division and controlled and/or owned by Asa Shapiro.

5.      Plaintiff, ILA II, L.L.C., is a Michigan limited liability company located in the Eastern District of Michigan, Southern Division and controlled and/or owned by Mickey Shapiro.

6.      Plaintiff, APTCAM, L.L.C., is a Michigan limited liability company located in the Eastern District of Michigan, Southern Division and controlled and/or owned by Mickey Shapiro.

7.      Plaintiff, CAMAPT, L.L.C., is a Michigan limited liability company located in the Eastern District of Michigan, Southern Division and controlled and/or owned by Asa Shapiro.

8.      Defendant, Richard Martin Lewiston ("Lewiston"), is a resident of the Eastern District of Michigan, Southern Division, and has conducted business herein at all times relevant hereto.

9.      On August 13, 2012, Lewiston filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. 101, *et seq.*[1]) in the Bankruptcy Court for the Eastern District of Michigan, Southern Division, which presently pends in this Court.

---

[1]      References to the Bankruptcy Code are to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, as amended, and will hereinafter be referred to as "Section _____".

10. This adversary proceeding seeks a judgment that the Defendant is not entitled to a discharge under 11. U.S.C. § 523 and it is therefore a core proceeding within 28 U.S.C. § 157(b).

11. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

13. The bar date for filing proofs of claim is January 14, 2013.

## GENERAL ALLEGATIONS

14. Mickey Shapiro and his father, Asa Shapiro (collectively, the "Shapiros"), have a business relationship with Lewiston that extends back many years.

15. As part of that business relationship, the Shapiros invested in several real estate companies that Lewiston was managing through the various Plaintiff entities which are creditors of Lewiston in connection with Lewiston's bankruptcy. Such investments include the following:

A. Plaintiffs, ILA I, L.L.C. and ILA II, L.L.C., maintain a collective 50% ownership interest in the Island Lake Associates real estate company, which is another creditor of Lewiston's in these bankruptcy proceedings.

B. Island Lake Associates maintains a 50% ownership interest in the Cambridge Development Associates real estate company, which is another creditor of Lewiston's in these bankruptcy proceedings. Therefore, Plaintiffs, ILA I, L.L.C. and ILA II, L.L.C., maintain a collective 25% ownership interest in Cambridge Development Associates.

C. Plaintiffs, Mickey Shapiro Trust and Asa Shapiro Declaration of Trust, maintain a collective 34% ownership interest in the Fairway West Associates real estate company, which is another creditor of Lewiston's in these bankruptcy proceedings.

D. Fairway West Associates maintains a 50.93% ownership interest in the

3

Founders Woods Associates real estate company, which is another creditor of Lewiston's in these bankruptcy proceedings. Therefore, Plaintiffs, Mickey Shapiro Trust and Asa Shapiro Declaration of Trust, maintain a collective 17.32% ownership interest in Founders Woods Associates.

E.     Plaintiffs, APTCAM, L.L.C. and CAMAPT, L.L.C., maintain a collective 37.50% ownership interest in Plaintiff, Apartments at Cambridge, a real estate company which is another creditor of Lewiston's in these bankruptcy proceedings although Lewiston has improperly failed to list it as such in his schedules and statements of financial affairs filed with the Court.

16.     During the first part of 2010, it came to Mickey Shapiro's attention (at that time and through the present, Mickey Shapiro manages his father's business affairs in connection with Lewiston) that Lewiston was being sued by his longtime business partners, the Smith family (Case No. 108330-CZ in the Oakland County Circuit Court before the Honorable Martha D. Anderson), for millions of dollars in connection with Lewiston's alleged mismanagement and diversion of funds from numerous companies, including the companies in which the Plaintiff entities had invested.

17.     Of paramount concern to Mickey Shapiro at that time was Apartments at Cambridge, a condominium development project in Canton Township, Michigan which had been hemorrhaging money and carried a large mortgage balance of more than $2 million with its lender. Although both Lewiston and Mickey Shapiro were Managing Members of Apartments at Cambridge, Lewiston had been running the company's day-to-day operations.

18.     As Mickey Shapiro raised his concerns to Lewiston about the Smith family's allegations and whether the Shapiros' entities (APTCAM, L.L.C. and CAMAPT, L.L.C.) had

4

contributed more than their pro rata share of capital to Apartments at Cambridge, Lewiston provided Shapiro with a memorandum dated April 20, 2010 representing that Lewiston had contributed capital in the amount of $2,199,422 to Apartments at Cambridge through 2009 and that all of the members of Apartments at Cambridge had contributed their pro rata shares.

19.     In further response to the Shapiros' concerns, Lewiston issued a June 15, 2010 memorandum to Mickey Shapiro purporting to show $10,807,247 in supposed loans payable owed by Apartments at Cambridge, $8,629,747 of which was in purported loans from Lewiston, Lewiston's family and Lewiston's affiliated companies even though none of these individuals or entities had any involvement whatsoever with Apartments at Cambridge:

> A.     $4,922,674 allegedly from Lewiston;
>
> B.     $572,000 allegedly from The Richard M. Lewiston Irrevocable Trust;
>
> C.     $80,000 allegedly from Lewiston's wife, Lois Lewiston;
>
> D.     $173,750 allegedly from Lewiston's children, Leslie Lewiston Etterbeek and Jason Lewiston;
>
> E.     $58,823 allegedly from Lewiston/Etterbeek Associates, L.L.C., a company owned by Lewiston, Lois Lewiston, Leslie Lewiston Etterbeek and her husband (Lewiston's son-in-law) Jeffrey Etterbeek, and Jason Lewiston and his ex-wife (Lewiston's former daughter-in-law) Jennifer Lewiston;
>
> F.     $2,116,000 allegedly from Founders Woods Associates;
>
> G.     $115,000 allegedly from Cambridge Development Associates;
>
> H.     $62,000 allegedly from Island Lake Associates; and
>
> I.     $529,500 allegedly from "Misc. Lewiston Affiliated Entities."

20.     The Shapiros and the Plaintiff entities were completely surprised and blindsided

by the purported loans set forth in Lewiston's June 15, 2010 memorandum, and such loans were of great concern to the Shapiros and the Plaintiff entities. In the first place, Lewiston had no authority or authorization to issue any loans from Founders Woods Associates, Cambridge Development Associates, Island Lake Associates or any other company in which any of the Plaintiffs, directly or indirectly, maintain ownership interests. Furthermore, the purported loans from such companies were funds that should have been distributed to Plaintiffs instead of being diverted to Apartments at Cambridge.

21.     Instead of answering for the so-called loans set forth in his June 15, 2010 memorandum, Lewiston continued to make capital calls upon the members of Apartments at Cambridge, but in reality only upon APTCAM, L.L.C., CAMAPT, L.L.C. and Richards-Pitt, L.L.C. inasmuch as the other members included his brother, Mickey Lewiston, his daughter, Leslie Lewiston Etterbeek and a company with whose principal Lewiston was engaged in protracted litigation.

22.     Lewiston used the purported loans payable owed by Apartments at Cambridge for the purpose of issuing capital calls to effectively hold APTCAM, L.L.C., CAMAPT, L.L.C. and Richards-Pitt, L.L.C. hostage and prevent them and the other Plaintiffs from pursuing any action against Lewiston for mismanaging Apartments at Cambridge and the other companies that they co-owned with Lewiston because the Shapiros and the manager of Richards-Pitt, L.L.C. had all signed guarantees on the Apartments at Cambridge mortgage such that the outstanding balance on the mortgage would be called in by the bank in the event that Lewiston stopped operating the Apartments at Cambridge project and/or failed to use the proceeds from condominium sales to repay the mortgage.

23.     To further keep APTCAM, L.L.C., CAMAPT, L.L.C. and Richards-Pitt, L.L.C.

from taking action against him, Lewiston issued a memorandum on August 25, 2010 stating that he would be issuing a capital call to the members of Apartments at Cambridge on the basis that Founders Woods Associates and another company that Lewiston was managing had demanded repayment of more than $2.5 million in purported loans to Apartments at Cambridge.

24.    The reality of the situation, as Plaintiffs realized from Lewiston's memoranda and conduct in response to their concerns, was that Lewiston had been running the other companies in which Plaintiffs maintain ownership interests with Lewiston as his alter egos, completely disregarding the company forms and agreements, and treating such companies as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit.

25.    Ultimately, Apartments at Cambridge paid off its mortgage at which time Lewiston lost his sole leverage in answering for his mismanagement of the companies in which Plaintiffs maintain ownership interests.  As a result, Lewiston voluntarily filed his Chapter 7 bankruptcy petition.

26.    As set forth in Plaintiffs' Complaint Objecting to Debtor's Discharge Pursuant to 11 U.S.C. § 727 which was filed against Lewiston concurrently with this Complaint, Lewiston filed a Summary of Schedules, Schedules A through J, a Declaration Concerning Debtor's Schedules and a Statement of Financial Affairs on August 27, 2012.  Lewiston also filed an Amended Schedule B and an Amended Statement of Financial Affairs on September 17, 2012. Absent from these bankruptcy filings with the Court was an accounting for the more than $32 million in net income declared by Lewiston in 2006 as well as for the $9 million in U.S. Treasury Bills that Lewiston liquidated in 2007.

27.    Also absent from Lewiston's bankruptcy filings with the Court was a disclosure

of Lewiston's ownership interests, direct and/or indirect, in more than two dozen different companies with significant if not substantial assets (in the form of real property, apartments, rent, management fees, etc.), including, but not limited to:

A.    FQA Associates, LLC;

B.    Pilgrim Village Associates;

C.    The Richard M. Lewiston Company;

D.    PVA Associates Limited Partnership;

E.    Stratford Apartments, LLC;

F.    The Heights Apartments Limited Partnership;

G.    The Heights Group, LLC;

H.    Greentrees Apartments Limited Partnership;

I.    Sullivan-Smith, Inc.;

J.    Practical Management Company;

K.    Green Acres Associates Limited Partnership;

L.    Tap Liquidating Company, LLC;

M.    RSJC Associates Limited Partnership;

N.    Cambridge Development Associates;

O.    Island Lake Associates;

P.    Founders Woods Associates;

Q.    Fairway West Associates;

R.    Sunflower Seven Associates;

S.    Summer Park Associates, LLC;

T.    Practical Development Co.;

8

U.     Practical Home Builders, Inc.;

V.     Starlight Homes, Inc.;

W.    Coolidge Commercial Associates, LLC;

X.     Southpointe Square Apartments Limited Partnership;

Y.     Sterling Lake Apartments;

Z.     Century Realty Investment Company Limited Partnership;

AA.   Legacy Development Associates, LLC;

BB.   Investment Advisors Company;

CC.   Big Beaver-Rochester Properties Limited Partnership;

DD.   Berger-Lewiston-Smith Realty Corporation;

EE.   B&L Realty Investments Limited Partnership;

FF.   Kingsley-Moravian Company Limited Partnership; and

GG.  Stephenson-Madison Heights Company Limited Partnership.

28.    Based upon Lewiston's testimony at the October 25, 2012 continuation of the Creditor's Meeting that his bankruptcy filings of August 27, 2012 and September 17, 2012 were truthful and accurate, it must be the case that Lewiston transferred his ownership interests in the above-referenced companies to his daughter, Leslie Lewiston Etterbeek, his son-in-law, Jeffrey Etterbeek and/or his other relatives or insiders as defined in the Bankruptcy Code. Lewiston made these transfers either within one year, but not more than six years, from the date of filing his bankruptcy petition in this matter.

29.    Lewiston's transfers: (a) were and are intended to hinder, delay or defraud Plaintiffs; (b) were made without receiving a reasonably equivalent value in exchange therefor; (c) done when Lewiston was insolvent or became insolvent as a result of said transfers; (d) after

9

said transfers, Lewiston's remaining assets were unreasonably small in relation to the transfers; and (e) Lewiston believed that he would incur debts beyond his ability to pay as said debts were incurred.

30.     By virtue of Lewiston's conduct against Plaintiffs, Lewiston should be denied a bankruptcy discharge pursuant to Section 523.

## COUNT I
### EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(A)

31.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 30 as if fully restated herein.

32.     11 U.S.C. § 523(a)(2)(A) provides that an individual debtor is not discharged from a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by– false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

33.     Lewiston's debt to Plaintiffs is excepted from discharge because such debt was obtained by false pretenses, false representations, and actual fraud based upon the following, without limitation.

A.     Lewiston ran the companies in which Plaintiffs maintain ownership interests with Lewiston as his alter egos, completely disregarding the company forms and agreements, and treating such companies as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit.

B.     For the years 2006 forward, the tax returns and K-1 forms prepared for the companies in which Plaintiffs maintain ownership interests with Lewiston reflected so-called intercompany loans which, in reality, were the funds that Lewiston diverted for his or his family's own benefit.

C.     Lewiston issued memoranda dated April 20, 2010, June 15, 2010 and August 25, 2010 misrepresenting and misstating many such intercompany loans as loans due from Apartments at Cambridge to Lewiston and/or related companies so that Lewiston and his family could seek repayments to which they were not entitled.  As but a few examples, Lewiston diverted well in excess of $8 million to Apartments at Cambridge from other companies that he was managing -- including Cambridge Development Associates, Island Lake Associates, Fairway West Associates and Founders Woods Associates in which Plaintiffs maintain ownership interests and all of which are listed by Lewiston as creditors in this bankruptcy -- even though: (a) such transfers were forbidden by those companies' respective partnership, operating and shareholder agreements; (b) Lewiston improperly booked many such transfers as loans made by Lewiston despite the fact that the monies came from those other companies and reflected other parties' ownership interests; and (c) Lewiston reimbursed himself for many such transfers -- Lewiston received checks totaling more than $6.6 million -- despite the fact that they came from those other companies and reflected other parties' ownership interests and therefore are not accounts receivable of Lewiston, but rather, those of the companies from which the monies were transferred and their members, partners, or shareholders, as the case may be.

D.     By way of illustration and not limitation, in managing the day-to-day operations of Apartments at Cambridge, Lewiston diverted as much as 50%, and perhaps more, of the company's gross revenue to himself and his affiliates.  Lewiston diverted more than $390,000 to his personal assistant Kelly Ann Spencer.  Lewiston diverted nearly $590,000 to Lewiston-Crescentini Homes, Inc., a company owned by his son, Jason Lewiston, even though such persons or entities had no involvement whatsoever in Apartments at Cambridge.  Lewiston diverted nearly $4.2 million to Outdoor Solutions, Inc., a landscape contracting company owned

11

by his son-in-law, Jeffrey Etterbeek, who is a tennis instructor by trade, and such amount is as much as four times the amount of money that the landscaping should have cost. Curiously, there are no records of any bidding for such purported landscaping work. Lewiston diverted more than $1.7 million to LR Management Services Corporation, a purported apartment management company owned by Lewiston's daughter, Leslie Lewiston Etterbeek, even though: (a) Apartments at Cambridge is actually a condominium development such that no apartment management, or no management for the monies transferred, is required; (b) there is no documentation justifying the more than $1.7 million paid to LR Management Services Corporation (e.g., who was paid from this money and for what were they paid); (c) there are no records of any bidding for the purported work for which LR Management Services Corporation was paid; and (d) Leslie Lewiston Etterbeek's company, Traditions Brokerage Services Corporation, was paid commissions of more than $1.5 million on condominium sales -- an amount far in excess of the reasonable value of services rendered and in excess of the traditional amounts due for like services rendered.

       E.    Lewiston used the purported loans payable owed by Apartments at Cambridge for the purpose of issuing capital calls to effectively hold APTCAM, L.L.C., CAMAPT, L.L.C. and Richards-Pitt, L.L.C. hostage and prevent them and the other Plaintiffs from pursuing any action against Lewiston for mismanaging Apartments at Cambridge and the other companies that they co-owned with Lewiston because the Shapiros and the manager of Richards-Pitt, L.L.C. had all signed guarantees on the Apartments at Cambridge mortgage such that the outstanding balance on the mortgage would be called in by the bank the event that Lewiston stopped operating the Apartments at Cambridge project and/or failed to use the proceeds from condominium sales to repay the mortgage.

F.    To further avoid his debt to Plaintiffs and obtain a bankruptcy discharge, Lewiston transferred his assets to his wife, children and his children's spouses within one year, but not more than six years, from the date of filing his bankruptcy petition in this matter. Such assets include more than $32 million in net income declared by Lewiston in 2006 as well as $9 million in U.S. Treasury Bills that Lewiston liquidated in 2007. Such assets further include ownership interests, direct and/or indirect, in more than two dozen different companies with significant if not substantial assets in the form of real property, apartments, rent, management fees and other assets. The transfer alleged above and others were fraudulent and the consequences thereof and resulting damages are exempted from discharge as amounts created by Lewiston's fraud.

34.    Lewiston's conduct constitutes a false pretense because it was a mute charade intended to create or foster a false impression from Plaintiffs that Lewiston was properly running the companies in which Plaintiffs maintain ownership interests with Lewiston. Lewiston's conduct further constitutes a false pretense because Lewiston failed to disclose material facts -- his diversion of funds from the companies in which Plaintiffs maintain ownership interests with Lewiston and Lewiston's transfer of his assets -- to avoid his debts to Plaintiffs.

35.    Lewiston's conduct constitutes a false representation because Lewiston represented to Plaintiffs -- orally, through the tax returns and K-1 forms prepared for the companies in which Plaintiffs maintain ownership interests with Lewiston for the years 2006 forward and through his memoranda dated April 20, 2010, June 15, 2010 and August 25, 2010 -- the legitimacy of Lewiston's intercompany loans as loans payable that were owed by Apartments at Cambridge to Lewiston even though this was not true and created a false asset which was really owed to other companies, and Lewiston's action created as to Plaintiffs a debt created by

Lewiston's fraud.

36.     Lewiston's conduct constitutes actual fraud because Lewiston's conduct involved deceit, artifice, trick and design involving direct and active operation of Lewiston's mind to circumvent and cheat Plaintiffs out of distributions and other funds pertaining to their ownership interests in Apartments at Cambridge, Cambridge Development Associates, Island Lake Associates, Fairway West Associates and Founders Woods Associates and divert the funds to Lewiston, his family and other entities, in which Plaintiffs do not have an interest.

37.     Lewiston's false pretenses, false representations and actual fraud were made for the purpose of preventing Plaintiffs from discovering, pursuing relief and obtaining relief for Lewiston's diversion of funds that were owed to Plaintiffs.

38.     Plaintiffs justifiably relied upon Lewiston's false pretenses, false representations and actual fraud by virtue of the parties' longstanding business relationship.  The Shapiros and Lewiston also enjoyed a cordial personal relationship as well which served as a foundation for Plaintiffs' justifiable reliance upon Lewiston's false pretenses, false representations and actual fraud.  Plaintiffs' justifiable reliance is further evidenced by the fact that the tax returns and K-1 forms were submitted to the federal and state governments as representations of the alleged true facts, when in fact they appear to be false.

39.     Plaintiffs have been damaged by Lewiston's false pretenses, false representations and actual fraud by virtue of the funds that are owed to them that Lewiston diverted for his and his family's benefit.  At present, Plaintiffs are uncertain as to the general range, let alone the precise amount, of their damages because Plaintiffs have not yet been provided with full and complete books and records for all of the companies in which they maintain ownership interests with Lewiston.  Such damages, however, should be well in excess of $1 million.

14

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A.  Except the more than $1 million owed to Plaintiffs from Lewiston's bankruptcy discharge pursuant to Bankruptcy Code Section 523(a)(2)(A);

B.  Award interest, cost of collection and attorney fees pursuant to FRBP Rule 7008(b); and

C.  Grant such other and further relief as is here appropriate.

## COUNT II
## EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(B)

40.  Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 39 as if fully restated herein.

41.  Section 523(a)(2)(B) provides that an individual debtor is not discharged from a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by– use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

42.  Lewiston ran the companies in which Plaintiffs maintain ownership interests with Lewiston as his alter egos, completely disregarding the company forms and agreements, and treating such companies as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit.

43.  For the years 2006 forward, the tax returns and K-1 forms prepared for the companies in which Plaintiffs maintain ownership interests with Lewiston reflected so-called intercompany loans which, in reality, were the funds that Lewiston diverted for his or his family's own benefit.

44.  Lewiston used the tax returns and K-1 forms, along with his memoranda dated

15

April 20, 2010, June 15, 2010 and August 25, 2010, to convey to Plaintiffs the impression that: (a) Lewiston was properly running the companies in which Plaintiffs maintain ownership interests with Lewiston; and (b) the intercompany loans on the companies' books and records were legitimate.

45.     The tax returns, K-1 forms and Lewiston's memoranda were materially false because they reflected so-called intercompany loans as good and proper loans even though such loans, in reality, were the funds that Lewiston diverted for his or his family's own benefit and from other companies or entities in which Plaintiffs did not have an interest.

46.     The tax returns, K-1 forms and Lewiston's memoranda therefore misrepresented Lewiston's financial condition and that of the companies in which Plaintiffs maintain ownership interests with Lewiston, all of which were Lewiston's alter egos and were insiders by definition pursuant to 11 U.S.C. § 101 in any event.  Further, various representations contained therein were misleading or totally false as above set forth and otherwise.

47.     Plaintiffs reasonably relied upon the tax returns, K-1 forms and Lewiston's memoranda by virtue of the fact that: (a) they were representations by Lewiston to the federal and state governments; and (b) by virtue of the of the parties' longstanding personal and business relationship.

48.     Lewiston issued the tax returns, K-1 forms and memoranda with the intent to deceive Plaintiffs.

49.     Lewiston issued the tax returns, K-1 forms and memoranda with the intent to deceive Plaintiffs for the purpose of preventing Plaintiffs from discovering, pursuing relief and obtaining relief for Lewiston's diversion of the funds that are owed Plaintiffs that Lewiston diverted for his and his family's benefit.

16

50.     Plaintiffs have been damaged by Lewiston's false statements.    At present, Plaintiffs are uncertain as to the general range, let alone the precise amount, of their damages because Plaintiffs have not yet been provided with full and complete books and records for all of the companies in which they maintain ownership interests with Lewiston.    Such damages, however, should be well in excess of $1 million.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A.      Except the more than $1 million owed to Plaintiffs from Lewiston's bankruptcy discharge pursuant to Bankruptcy Code Section 523(a)(2)(B);

B.      Award interest, cost of collection and attorney fees pursuant to FRBP Rule 7008(b); and

C.      Grant such other and further relief as is here appropriate.

## COUNT III
## EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(4)

51.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 50 as if fully restated herein.

52.     Section 523(a)(4) provides that an individual debtor is not discharged from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

53.     Partners of a partnership owe a fiduciary duty to the partnership pursuant to Section 21 of the Michigan Uniform Partnership Act (MCL § 449.21).

54.     The manager of a limited liability company owes a fiduciary duty to the limited liability company pursuant to pursuant to Section 404 of the Michigan Uniform Limited Liability Company Act (MCL § 450.4404).

55.     Officers of a corporation owe a fiduciary duty to the corporation pursuant to Section 541a of the Michigan Business Corporation Act (MCL § 450.1541a).

56.     Lewiston ran the entities in which Plaintiffs maintain ownership interests with

Lewiston as his alter egos, completely disregarding the company forms and agreements, and treating such companies as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit and entered into agreements beneficial to the recipient and detrimental to Plaintiffs and others. Therefore, the company veils should be pierced such that Lewiston owed Plaintiffs a fiduciary duty of care in connection with those alter ego entities.

57.     Lewiston diverted more than $1 million that was owed to Plaintiffs for his and his family's benefit.

58.     Lewiston's diversion of the more than $1 million that was owed to Plaintiffs constitutes embezzlement and/or larceny exempting Lewiston's debt to Plaintiffs from discharge in this bankruptcy.

59.     Lewiston's diversion of the more than $1 million that was owed to Plaintiffs further constitutes fraud or defalcation while acting in a fiduciary capacity. Instead of holding the more than $1 million in trust for Plaintiffs and paying such funds to Plaintiffs, Lewiston diverted these funds for his and his family's benefit.

60.     Plaintiffs have been damaged by Lewiston's fraud or defalcation while acting in a fiduciary capacity, embezzlement, and/or larceny. At present, Plaintiffs are uncertain as to the general range, let alone the precise amount, of their damages because Plaintiffs have not yet been provided with full and complete books and records for all of the companies in which they maintain ownership interests with Lewiston. Such damages, however, should be well in excess of $1 million.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A.     Except the more than $1 million owed to Plaintiffs from Lewiston's bankruptcy discharge pursuant to Bankruptcy Code Section 523(a)(4);

B.      Award interest, cost of collection and attorney fees pursuant to FRBP Rule 7008(b); and

C.      Grant such other and further relief as is here appropriate.

**COUNT IV**
**EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. § 523(a)(6)**

61.     Plaintiffs hereby incorporate by reference and reallege the allegations set forth in Paragraphs 1 through 60 as if fully restated herein.

62.     Section 523(a)(6) provides that an individual debtor is not discharged from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

63.     Lewiston's debt to Plaintiffs is excepted from discharge pursuant to Section 523(a)(6) based upon the following actions, without limitation, which Lewiston took with malice and with the knowledge and the intent that such actions would and did in fact cause injury to Plaintiffs.

A.      Lewiston ran the companies in which Plaintiffs maintain ownership interests with Lewiston as his alter egos, completely disregarding the company forms and agreements, and treating such companies as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit and entered into agreements beneficial to the recipient and detrimental to Plaintiffs and others.

B.      For the years 2006 forward, the tax returns and K-1 forms prepared for the companies in which Plaintiffs maintain ownership interests with Lewiston reflected so-called intercompany loans which, in reality, were the funds from other entities that Lewiston diverted for his or his family's own benefit.

C.      Lewiston issued memoranda dated April 20, 2010, June 15, 2010, June 18,

19

2010 and August 25, 2010 misrepresenting and misstating many such intercompany loans as loans payable to Apartments at Cambridge so that Lewiston and his family could seek repayments to which they were not entitled.

D.      In managing the day-to-day operations of Apartments at Cambridge, Lewiston diverted as much as 50%, and perhaps more, of the company's gross revenue to himself and his affiliates.   Lewiston also diverted funds from Cambridge Development Associates, Island Lake Associates, Fairway West Associates and Founders Woods Associates in which Plaintiffs maintain ownership interests.

E.      Lewiston used the purported loans payable owed by Apartments at Cambridge and issued capital calls to effectively hold APTCAM, L.L.C., CAMAPT, L.L.C. and Richards-Pitt, L.L.C. hostage and prevent them and the other Plaintiffs from pursuing any action against Lewiston for mismanaging Apartments at Cambridge and the other companies that they co-owned with Lewiston because the Shapiros and the manager of Richards-Pitt, L.L.C. had all signed guarantees on the Apartments at Cambridge mortgage such that the outstanding balance on the mortgage would be called in by the bank the event that Lewiston stopped operating the Apartments at Cambridge project and/or failed to use the proceeds from condominium sales to repay the mortgage.

F.      To further avoid his debt to Plaintiffs and obtain a bankruptcy discharge, Lewiston transferred his assets to his wife, children and his children's spouses within one year, but not more than six years, from the date of filing his bankruptcy petition in this matter.  Such assets include more than $32 million in net income declared by Lewiston in 2006 as well as $9 million in U.S. Treasury Bills that Lewiston liquidated in 2007.   Such assets further include ownership interests, direct and/or indirect, in more than two dozen different companies with

significant if not substantial assets in the form of real property, apartments, rent, management fees and other assets.

64.     Lewiston's conduct was willful as it was done with the intent of injuring Plaintiffs and preventing Plaintiffs from discovering, pursuing relief and obtaining relief from Lewiston's diversion of monies owed to Plaintiffs.

65.     Lewiston's conduct was further willful and with intent to cause injury because, at a minimum, Lewiston believed that his conduct was substantially certain to result in Plaintiffs being prevented from discovering, pursuing relief and obtaining relief from Lewiston's diversion of funds that was owed to them and for injury to Plaintiffs resulting therefrom.

66.     Lewiston's conduct was malicious and intended to cause injury to Plaintiffs as it was committed without any justification or excuse whatsoever.

67.     Lewiston's conduct was malicious and with intent to injure as it was committed solely to injure Plaintiffs and benefit Lewiston and his family.

68.     Lewiston's conduct was also malicious as it was committed in conscious disregard of Lewiston's duties to Plaintiffs and without any legal justification whatsoever.

69.     Lewiston's intentional and malicious conduct caused injury to Plaintiffs as it was intended to do.  At present, Plaintiffs are uncertain as to the general range, let alone the precise amount, of their damages because Plaintiffs have not yet been provided with full and complete books and records for all of the companies in which they maintain ownership interests with Lewiston.  Such damages, however, should be well in excess of $1 million.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

A.     Except the more than $1 million owed to Plaintiffs from Lewiston's bankruptcy discharge pursuant to Bankruptcy Code Section 523(a)(6);

B.      Award interest, cost of collection and attorney fees pursuant to FRBP Rule 7008(b); and

C.      Grant such other and further relief as is here appropriate.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC
By: /s/ Daniel E. Harold
MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
DANIEL E. HAROLD (P61841)
Counsel for Plaintiffs
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan  48009
(248) 864-4000
dharold@morganrothlaw.com

SULLIVAN, WARD, ASHER & PATTON, P.C.
By: /s/ Wallace M. Handler
WALLACE M. HANDLER (P14598)
Of counsel to Plaintiffs
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
(248) 746-0700
Email:  whandler@swappc.com

Dated:  November 19, 2012