UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

RICHARD MARTIN LEWISTON

    Debtor

Case No. 12-58599-pjs
Chapter 7
Hon. Phillip J. Shefferly

_____/

APARTMENTS AT CAMBRIDGE COMPANY, L.L.C., MICKEY SHAPIRO TRUST, ASA SHAPIRO DECLARATION OF TRUST, ILA I, L.L.C., ILA II, L.L.C., APTCAM, L.L.C. and CAMAPT, L.L.C.,

    Plaintiffs,

vs.

RICHARD MARTIN LEWISTON,

    Defendant,

and

GENE R. KOHUT, Chapter 7 Trustee for the
Bankruptcy Estate of Richard Martin Lewiston,

    Nominal Defendant.

Adv. Proc. No. 12-06003

_____/

**CHAPTER 7 TRUSTEE'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS APTCAM, L.L.C. AND CAMAPT, L.L.C. FOR LACK OF STANDING**

Gene R. Kohut, Chapter 7 Trustee ("Trustee") of the Debtor's bankruptcy estate, through counsel, Wolfson Bolton PLLC, for his Brief in Support of Motion to Dismiss Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. for Lack of Standing states:

**I.    INTRODUCTION**

Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. allege Lewiston improperly diverted funds from Apartments at Cambridge Company, L.L.C. ("AAC"), a Michigan limited liability company. APTCAM, L.L.C. and CAMAPT, L.L.C. are interest holders in AAC; they sustained a loss, if any, only indirectly from the alleged injuries to AAC.

The law is clear: interest holders of a limited liability company lack standing to assert claims for alleged harm to the company. Accordingly, Plaintiffs APTCAM, L.L.C. and CAMAPT L.L.C. should be dismissed from this suit under Fed. R. Civ. P. 12(b)(1)[1] because they lack constitutional and prudential standing.

## II. BACKGROUND

Debtor Richard Martin Lewiston ("Lewiston") managed AAC, in which Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. claim a 37.50% collective membership interest. Complaint, ¶ 15(E).[2]

Plaintiffs commenced this adversary proceeding objecting to Lewiston's discharge of alleged debts under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6). Complaint, Counts I-IV. In every count, Plaintiffs claim Lewiston treated the companies he managed "as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit," (Complaint, ¶¶ 33(A), 42, 56, and 63(A)), and that he "diverted as much as 50% . . . of [AAC's] gross revenue to himself and his affiliates." Complaint, ¶¶ 33(D), 63(D). More generally, Plaintiffs allege Lewiston diverted funds from companies he managed, which, in turn, injured the interest holders of those companies. *See, e.g.*, Complaint, ¶¶ 33, 43, 57, 63.

Michigan law provides that a limited liability company is a legal entity distinct from its members. *See Trident-Allied Assocs., LLC v. Cypress Creek Assocs., LLC*, 317 F. Supp. 2d 752, 754 (E.D. Mich. 2004); *Hills & Dales Gen. Hosp. v. Pantig*, 812 N.W.2d 793, 797 (Mich. Ct. App. 2011). The injuries Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. allege are to AAC, a limited liability company Lewiston managed, and not to the Plaintiffs individually. Any potential injury to Plaintiffs is indirect. Accordingly, Plaintiffs APTCAM, L.L.C., and CAMAPT, L.L.C. should be dismissed from this suit for lack of standing.

---

[1] Made applicable to this proceeding by Fed. R. Bankr. P. 7012.

[2] While the facts alleged in the Plaintiffs' Complaint are assumed to be true for purposes of the Trustee's motion, the Trustee is not waiving his right to challenge any factual allegations.

### III. APPLICABLE AUTHORITY

Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"Standing 'goes to [a] [c]ourt's subject matter jurisdiction.'" *Kepley v. Lanz*, No. 12-5078, 2013 U.S. App. LEXIS 9384, at *3 (6th Cir. May 9, 2013) (citation omitted) (attached as Exhibit 6). Therefore, a motion to dismiss for lack of standing is properly brought under Fed. R. Civ. P. 12(b)(1). *Id.*; *see also Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). When considering a motion for lack of standing, a court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501. If the court determines at any time that a party lacks standing, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

### IV. ARGUMENT

**A. Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. lack constitutional standing because they allege Lewiston injured AAC, and LLCs are legal entities distinct from their members.**

**i. Legal Standard**

The constitutional inquiry into standing requires a court to determine "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth*, 422 U.S. at 498. To establish Article III standing, a plaintiff must meet three requirements. *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (citation omitted). The first requirement is a direct injury, or "a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citation omitted). The

second requirement is causation, or "a 'fairly . . . traceable' connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.* (citation omitted). The final requirement is redressability, or "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Id.* (citation omitted). In the context of corporations, "a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation." *Gaff v. FDIC*, 814 F.2d 311, 315 (6th Cir. 1987). In Michigan, "[t]he rules respecting the corporate form apply equally to limited liability corporations." *Hills & Dales Gen. Hosp.*, 812 N.W.2d at 797.

    ii.  **Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. cannot demonstrate Article III standing because they were only indirectly harmed by Lewiston's alleged injury to AAC.**

Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. allege Lewiston improperly diverted funds from AAC. While this allegation may give rise to the inference that Lewiston directly injured AAC, it does not give rise to the inference that Lewiston directly injured them, interest holders of AAC. This inference is lacking because, in Michigan, a limited liability company is a legal entity distinct from its interest holders. *See Trident-Allied Assocs.,* 317 F. Supp. 2d at 754 ("It is evident that the Michigan legislature fashioned the limited liability company to be a legal entity distinct from its members."); *Hills & Dales Gen. Hosp.*, 812 N.W.2d at 797.

Indeed, under Michigan's Limited Liability Company Act, "[a] member has no interest in specific limited liability company property." MCL § 450.4504(2). "Similarly, members are not liable for the acts, debts, or obligations of the limited liability company." *Trident-Allied Assocs., LLC*, 317 F. Supp. 2d at 754 (citing MCL § 450.4501(3)). "In addition, limited liability companies have the power to sue and be sued."[3] *Id.* (citing MCL § 450.4210). Other courts in states with

---

[3] Michigan Compiled Law § 450.4510 permits an individual member to maintain a civil suit in the right of a limited liability company if certain conditions are met. Plaintiffs allege harm to AAC. Therefore, Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. must bring a suit against Lewiston derivatively. *See, e.g.*, *Gaff v. FDIC*, 814 F.2d 311, 315 (6th Cir. 1987) ("A suit for damages arising from an injury to the corporation can only be brought by the corporation itself or by a

similar, if not identical, limited liability company statutes have reached the same conclusion as the court in *Trident*. *See, e.g.*, *White v. Whittle (In re Whittle)*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011) ("SGGUSA is a separate legal entity created pursuant to Florida statutes."); *Blixseth v. Blixseth (In re Blixseth)*, 459 B.R. 444, 457 (Bankr. D. Mont. 2011) ("As in other states, an LLC in Montana is a separate entity….").

The damages Plaintiffs claim derive solely from Lewiston allegedly diverting funds from AAC. For instance, Plaintiffs claim Lewiston "treat[ed] such companies as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit," (Complaint, ¶¶ 33(A), 42, 56, and 63(A)), that Plaintiffs "have been damaged . . . by virtue of the funds that are owed to them that Lewiston diverted for his and his family's benefit," (Complaint, ¶ 39), and that "Lewiston diverted more than $1 million" from the companies he managed, (Complaint, ¶ 57). Specifically, Plaintiffs allege Lewiston "diverted as much as 50% . . . of [AAC's] gross revenue to himself and his affiliates." Complaint, ¶¶ 33(D), 63(D). Even assuming these facts to be true, Plaintiffs cannot demonstrate a direct injury or causation between Plaintiffs and the alleged actions of Lewiston – only AAC has purportedly been damaged. Any damages to Plaintiffs are indirect.

This case is analogous to the Middle District of Florida case *White v. Whittle (In re Whittle)*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011). In that case, the plaintiffs, Paul White, Gateshearth Trustees Limited, and Garcroft Trustees Limited, and the defendant/debtor, Gregory Whittle, were members of SGGUSA, a Florida limited liability company. *Id.* at 428. After Whittle filed for bankruptcy, the plaintiffs brought an adversary proceeding in their individual capacities against Whittle under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). *Id.* The plaintiffs claimed "Whittle's misuse of the LLC's monies amount[ed] to fraud, embezzlement, or larceny." *Id.* at 430.

---

shareholder derivatively if the corporation fails to act since only the corporation has an action for wrongs committed to it.").

In ruling on Whittle's motion to dismiss, the court agreed with debtor Whittle that "the claims for diversion of company monies are general claims held by SGGUSA, not claims that individual members of the LLC can assert against Whittle directly." *Id.* at 428. Looking at the allegations in the complaint, "the Court absolutely could draw reasonable inferences that *SGGUSA* was damaged by Whittle's diversion of the LLC's funds." *Id.* at 430. (emphasis in original). But, "[t]he alleged facts . . . do *not* support a conclusion that plaintiffs, as members of SGGUSA, are owed a debt by Whittle." *Id.* (emphasis in original).

The *Whittle* plaintiffs further argued that, "by virtue of their membership in the LLC, its damages are their own personal damages." *Id.* at 430. The court held this argument "disregard[ed] the fact that SGGUSA is a separate legal entity created pursuant to Florida statutes." *Id.* "The Florida statutory scheme is clear that a limited liability company holds property separate and apart from the property of its members." *Id.* The court made clear that any injuries to the company were not injuries to the individual members of that company. *Id.* Therefore, the plaintiffs did not allege facts that supported a conclusion that they were directly injured, and the court dismissed the complaint. *Id.*

Many courts have followed *Whittle*. For example, the Bankruptcy Court of the District of Montana cited *Whittle* with approval in *Blixseth v. Blixseth (In re Blixseth)*, 459 B.R. 444 (Bankr. D. Mont. 2011). In that case, the plaintiffs, Beau Blixseth and Morgan Blixseth, brought a complaint in their individual capacities seeking to deny the debtor/defendant Edra Blixseth's discharge under 11 U.S.C. § 523(a)(4). *Id.* at 447. While the Blixseths and Edra were all members of Blixseth Family Investments, LLC ("BFI"), the company itself was not a party to the suit. *Id.* at 448.

The court held against the plaintiffs, finding that "[t]he alleged injury suffered was to BFI as an entity, and not to the Blixseths directly. **The Blixseths suffered a loss, if any, only indirectly as members of BFI**." *Id.* (emphasis added). Citing *Whittle* and the statute governing limited liability companies in Montana, the court held "Montana prohibits individual actions to be

{00015078.DOCX 5 }                                    6

brought in place of a derivative action. Under such circumstances, a derivative claim is not only appropriate, but required." *Id.* at 457.

Similarly, APTCAM, L.L.C. and CAMAPT, L.L.C. sustained a loss, if any, only indirectly as interest holders of AAC. They lack constitutional standing to bring the present claims because those claims belong to AAC. Accordingly, Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. should be dismissed from this suit under Fed. R. Civ. P. 12(b)(1).

### iii. The alter ego doctrine does not apply to Plaintiffs.

Plaintiffs claim that Lewiston and the companies he managed are alter egos, but the alter ego doctrine simply does not apply. To challenge the dischargeability of a debt under 11 U.S.C. § 523, "the creditor to whom such debt is owed" must request the bankruptcy court to except the debt from discharge. 11 U.S.C. § 523(c)(1). "Standing to bring a dischargeability action calls for a 'creditor' holding a 'debt' or 'claim' that 'is owed' to that 'creditor.'" *Blixseth*, 459 B.R. at 456. A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A "debt" is a "liability on a claim." *Id.*, § 101(12). A "claim" means a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." *Id.*, § 101(5). In turn, a "right to payment" is "nothing more nor less than an enforceable obligation." *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998).

The interest holders of AAC are not "creditors" of Lewiston within the meaning of 11 U.S.C. § 523 because they do not have "claims" against Lewiston. An interest holder of a company cannot assert an alter ego claim against another interest holder of that company. The doctrine applies only in situations where a third party creditor seeks to hold an individual equity holder personally liable for the debts of the company.[4]

---

[4] *Cf. Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 602 (6th Cir. 2005) (third party steel manufacturer sought determination that steel brokerage and its sole shareholder were alter egos); *Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Products Co.)*, 102 F.3d 223, 224 (6th Cir. 1996) (third party creditor Spartan Tube & Steel, Inc. sought

{00015078.DOCX 5}   7

"The general rule is that the corporate veil is pierced only for the benefit of third parties, and **never for the benefit of the corporation or its stockholders**." *Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Products Co.)*, 102 F.3d 223, 227 (6th Cir. 1996) (applying Michigan law) (emphasis added). The doctrine "fastens liability on the individual who uses a corporation merely as an instrumentality to conduct his or her own personal business, and such liability arises from fraud or injustice perpetuated not on the corporation **but on third persons dealing with the corporation**." *Id.* (emphasis added). Therefore, Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C., as interest holders of AAC, cannot, as a matter of law, assert an alter ego claim against Lewiston, who is also an interest holder of AAC.

Even if Lewiston and AAC were considered alter egos, such a finding would not help Plaintiffs. "'[A] contention that *A* is *B*'s 'alter ego' asserts that *A* and *B* are *the same entity*; liability then is not vicarious but direct.'" *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302 (6th Cir. 2005) (emphasis in original). Plaintiffs assert Lewiston diverted funds from AAC. If Lewiston and AAC were one and the same, then Plaintiffs be arguing that Lewiston diverted funds from himself. Therefore, a finding that Lewiston and the companies he managed are alter egos would not confer standing upon Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C.

### B. Plaintiffs lack prudential standing because they are not the real parties in interest.

#### i. Legal Standard

Prudential standing precludes litigation in federal court in situations: (1) when the asserted harm is a generalized grievance shared in substantially equal measure by all or a large

---

determination that parent company Railcar Specialties and subsidiary company RCS Engineered Products Co. were alter egos); *RDM Holdings, LTD v. Cont'l Plastics Co.*, 762 N.W.2d 529, 533 (Mich. Ct. App. 2008) (third party creditor RDM Holdings, LTD sought determination that parent company Continental Plastics Co. and subsidiary company Continental Coatings, LLC were alter egos); *Kline v. Kline*, 305 N.W.2d 297, 298 (Mich. Ct. App. 1981) (third party creditor Delta Dental Plan sought determination that professional service corporation Robert L. Kline, D.D.S., P.C. and its owner Robert L. Kline were alter egos).

class of citizens; (2) when the plaintiff rests his/her claim to relief on the legal rights or interests of third parties; and (3) when the plaintiff's complaint falls outside the zone of interests to be protected or regulated by statute or the constitutional guarantee in question. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349 (6th Cir. 2007). The second prudential consideration is codified in Fed. R. Civ. P. 17(a): "[a]n action must be prosecuted in the name of the real party in interest." Unlike inquiries into constitutional standing, which may be raised at any time, "'[o]bjections to standing based upon prudential considerations are waived if not timely raised.'" *JRG Assocs., LLC v. Brown (In re Brown)*, 442 B.R. 585, 598 (Bankr. E.D. Mich. 2011).

> ii. **The real party in interest is AAC – the company Lewiston allegedly injured – not the interest holders of AAC.**

Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. are not the real parties in interest. Taking the allegations in the Complaint as true, this Court may draw the inference that AAC was damaged, but this would not support the conclusion that the interest holders of AAC are owed a debt by Lewiston. *See, e.g., Whittle*, 449 B.R. at 430.

Unlike constitutional standing, motions based upon prudential standing considerations must be timely filed. This motion is timely. Therefore, this Court should dismiss Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. from this suit because they rest their claim to relief on the legal rights or interests of a third party – AAC – and therefore lack prudential standing.

## V. CONCLUSION

For the reasons stated above, the Trustee requests that the Court dismiss Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. from this suit for lack of standing.

Respectfully submitted,

WOLFSON BOLTON PLLC

Dated: July 3, 2013

By: /s/ Scott A. Wolfson
Scott A. Wolfson (P53194)
Anthony J. Kochis (P72020)
3150 Livernois, Suite 275
Troy, MI 48083
Telephone: (248) 247-7103
E-mail: swolfson@wolfsonbolton.com