UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of:

RICHARD M. LEWISTON,

        Debtor.

Bankruptcy Case No. 12-58599
Hon. Philip J. Shefferly
Chapter 7

_____/

APARTMENTS AT CAMBRIDGE COMPANY,
L.L.C., MICKEY SHAPIRO TRUST, ASA SHAPIRO
DECLARATION OF TRUST, ILA I, L.L.C., ILA II,
L.L.C., APTCAM L.L.C., and CAMAPT, L.L.C.

        Plaintiffs,

vs.

Adv. Pro. No. 12-06003

RICHARD M. LEWISTON,

        Defendant,

and

GENE R. KOHUT, Chapter 7 Trustee for the
Bankruptcy Estate of Richard Martin Lewiston,

        Nominal Defendant.

_____/

### PLAINTIFFS' ANSWER IN OPPOSITION TO
### CHAPTER 7 TRUSTEE'S MOTION TO DISMISS PLAINTIFFS
### APTCAM, L.L.C. AND CAMAPT, L.L.C. FOR LACK OF STANDING

NOW COME Plaintiffs, by and through their attorneys, Morganroth & Morganroth, PLLC and Sullivan, Ward, Asher & Patton, P.C., of counsel, and, for their Answer in Opposition to Chapter 7 Trustee's Motion to Dismiss Plaintiffs APTCAM, L.L.C. and CAMAPT, L.L.C. for Lack of Standing, hereby state as follows.

1. In Answer to Paragraph 1, no answer is required to the Trustee's statement. In further Answer, Plaintiffs deny that the Trustee's motion has any basis in fact and law for reason untrue.

2. In Answer to Paragraph 2, Plaintiffs admit.

3. In Answer to Paragraph 3, Plaintiffs neither admit nor deny the allegations contained therein for lack of sufficient information upon which to form an opinion or belief.

This Answer in Opposition is further supported by an accompanying Brief in Opposition.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court deny the instant motion in its entirety and award to Plaintiffs all costs and attorney fees incurred in being forced to defend against it. A proposed order is attached to the accompanying Brief in Opposition.

Respectfully submitted,

| MORGANROTH & MORGANROTH, PLLC | SULLIVAN, WARD, ASHER & PATTON, P.C. |
|---|---|
| By: /s/ Daniel E. Harold | By: /s/ Wallace M. Handler |
| MAYER MORGANROTH (P17966) | WALLACE M. HANDLER (P14598) |
| DANIEL E. HAROLD (P61841) | Of counsel to Plaintiffs |
| Counsel for Plaintiffs | 1000 Maccabees Center |
| 344 North Old Woodward Avenue, Suite 200 | 25800 Northwestern Highway |
| Birmingham, Michigan 48009 | Southfield, MI 48075-1000 |
| (248) 864-4000 | (248) 746-0700 |
| dharold@morganrothlaw.com | whandler@swappc.com |

Dated: July 22, 2013

1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the Matter of:

RICHARD M. LEWISTON,

    Debtor.
_____/

Bankruptcy Case No. 12-58599
Hon. Philip J. Shefferly
Chapter 7

APARTMENTS AT CAMBRIDGE COMPANY,
L.L.C., MICKEY SHAPIRO TRUST, ASA SHAPIRO
DECLARATION OF TRUST, ILA I, L.L.C., ILA II,
L.L.C., APTCAM L.L.C., and CAMAPT, L.L.C.

    Plaintiffs,

vs.

Adv. Pro. No. 12-06003

RICHARD M. LEWISTON,

    Defendant,

and

GENE R. KOHUT, Chapter 7 Trustee for the
Bankruptcy Estate of Richard Martin Lewiston,

    Nominal Defendant.
_____/

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## CHAPTER 7 TRUSTEE'S MOTION TO DISMISS PLAINTIFFS
## APTCAM, L.L.C. AND CAMAPT, L.L.C. FOR LACK OF STANDING

## STATEMENT OF FACTS

Mickey Shapiro and his father, Asa Shapiro (collectively, the "Shapiros"), have a business relationship with Debtor, Richard M. Lewiston ("Lewiston"), that extends back many years. (Dkt. No. 1 at ¶ 14)[1]. As part of their business relationship, the Shapiros invested in several real estate companies that Lewiston was managing through the various Plaintiff entities which are creditors of Lewiston in connection with Lewiston's bankruptcy. *Id.* at ¶ 15.

As is relevant to the instant motion, Plaintiff, Apartments at Cambridge Company, L.L.C. ("Apartments at Cambridge") is a condominium development in Canton Township which has been managed by Lewiston since its inception in November 1999. *Id.* at ¶¶ 15, 17; Exh. 2. The Shapiros are the respective principals of Plaintiffs, APTCAM, L.L.C. ("APTCAM") and CAMAPT, L.L.C. ("CAMAPT") which maintain a collective ownership interest of 37.50% in Apartments at Cambridge. Exh. 1 at ¶¶ 6-7.

During the first part of 2010, it came to Mickey Shapiro's attention[2] that Lewiston was being sued by his longtime business partners, the Smith family (Case No. 108330-CZ in the Oakland County Circuit Court before the Honorable Martha D. Anderson), for millions of dollars in connection with Lewiston's alleged mismanagement and diversion of funds from numerous companies, including the companies in which the Plaintiff entities had invested[3]. Exh. 1 at ¶ 16. Of paramount concern to Mickey Shapiro at that time was Apartments at Cambridge which had

---

[1] This is Plaintiffs' Complaint Objecting to Debtor's Discharge Pursuant to 11 U.S.C. § 523 which is attached hereto as Exhibit 1 for convenient reference.

[2] At that time and through the present, Mickey Shapiro manages his father's business affairs in connection with Lewiston.

[3] The Smith family has also filed a Complaint Objecting to Debtor's Discharge Pursuant to 11 U.S.C. § 523 which is Adversary Proceeding No. 12-06006.

1

been hemorrhaging money and carried a large mortgage balance of more than $2 million with its lender. *Id.* at ¶ 17.

Mickey Shapiro raised his concerns to Lewiston about the Smith family's allegations and whether the Shapiros' entities (APTCAM and CAMAPT) had contributed more than their pro rata share of capital to Apartments at Cambridge. *Id.* at ¶ 18. In response, Lewiston provided Mickey Shapiro with a memorandum dated April 20, 2010 representing that Lewiston had contributed capital in the amount of $2,199,422 to Apartments at Cambridge through 2009 and that all of the members of Apartments at Cambridge had contributed their pro rata shares. *Id.*; Exh. 3.

In further response to the Shapiros' concerns, Lewiston issued a June 15, 2010 memorandum to Mickey Shapiro purporting to show $10,807,247 in supposed loans payable owed by Apartments at Cambridge, nearly $2.3 million of which was in purported loans from companies in which the other Plaintiffs maintain ownership interests. Exh. 1 at ¶ 19; Exh. 4.

The Shapiros and the Plaintiff entities were completely surprised and blindsided by the purported loans set forth in Lewiston's June 15, 2010 memorandum for which Lewiston had no authority or authorization. Exh. 1 at ¶ 20; Exh. 4. Pursuant to Section 4.1 of the Apartments at Cambridge Operating Agreement, Lewiston was required to "give each Member at least fifteen (15) days' prior written notice of the need for [] further funding" in the form of loans. *See*, Exh. 2 at § 4.1. However, there are no records whatsoever of Lewiston providing any notice to the other members in connection with the loans disclosed for the first time in his June 15, 2010 memorandum, nor are there any loan documents or agreements in connection with those loans. *Id.*; Exh. 4.

Instead of answering for the so-called loans set forth in his June 15, 2010 memorandum,

2

Lewiston continued to make capital calls upon the members of Apartments at Cambridge, but in reality only upon APTCAM, CAMAPT and another member[4] inasmuch as the other members included his brother, Mickey Lewiston, his daughter, Leslie Lewiston Etterbeek, and a company with whose principal Lewiston was engaged in protracted litigation. Exh. 1 at ¶ 21. Lewiston used the purported loans payable owed by Apartments at Cambridge for the purpose of issuing capital calls to effectively hold APTCAM, CAMAPT and Richards-Pitt, L.L.C. hostage and prevent them and the other Plaintiffs from pursuing any action against Lewiston for mismanaging Apartments at Cambridge and the other companies that they co-owned with Lewiston because the Shapiros and the manager of Richards-Pitt, L.L.C. had all signed guarantees on the Apartments at Cambridge mortgage such that the outstanding balance on the mortgage would be called in by the bank in the event that Lewiston stopped operating the Apartments at Cambridge project and/or failed to use the proceeds from condominium sales to repay the mortgage. *Id.* at ¶ 22.

To further keep APTCAM, CAMAPT and Richards-Pitt, L.L.C. from taking action against him, Lewiston issued a memorandum on August 25, 2010 stating that he would be issuing a capital call to the members of Apartments at Cambridge on the basis that two other companies that Lewiston was managing had demanded repayment of more than $2.5 million in purported loans to Apartments at Cambridge. *Id.* at ¶ 23; Exh. 5.

The reality of the situation, as Plaintiffs realized from Lewiston's memoranda and conduct in response to their concerns, was that Lewiston had been running the other companies in which Plaintiffs maintain ownership interests with Lewiston as his alter egos, completely disregarding the company forms and agreements, and treating such companies as his own

---

[4] Richards-Pitt, L.L.C., which is a creditor of Lewiston and a plaintiff in Adversary Proceeding No. 12-06004.

3

personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit. Exh. 1 at ¶¶ 24, 33, 42, 46, 56, 63. For instance, with respect to Apartments at Cambridge as of the date of APTCAM's and CAMAPT's Complaint, Lewiston issued checks from Apartments at Cambridge to himself and his affiliates, including his family, in the aggregate amount of $23,773,783.31 which represented nearly 70% of the gross revenues generated by Apartments at Cambridge. *See*, Exhs. 6-7. Among these checks were the following, as but a few examples: (1) $390,000 to his personal assistant Kelly Ann Spencer; nearly $590,000 to Lewiston-Crescentini Homes, Inc., a company owned in part by Lewiston's son, Jason Lewiston, even though it had no involvement whatsoever in Apartments at Cambridge; (3) nearly $4.2 million to Outdoor Solutions, Inc., a landscape contracting company owned by his son-in-law, Jeffrey Etterbeek, who is a tennis instructor by trade, and such amount is as much as four times the amount of money that the landscaping should have cost; and (4) more than $3.2 million to companies allegedly owned by his daughter[5]. *Id.*; Exh. 1 at ¶¶ 33, 63.

Ultimately, Apartments at Cambridge paid off its mortgage at which time Lewiston lost his sole leverage in answering for his mismanagement of the companies in which Plaintiffs maintain ownership interests. As a result, Lewiston voluntarily filed his Chapter 7 bankruptcy petition. Exh. 1 at ¶ 25. Accordingaly, APTCAM and CAMAPT have commenced this Adversary Proceeding pursuant to 11 U.S.C. § 523 as well as an Adversary Proceeding pursuant to 11 U.S.C. § 727 (Adv. Proc. No. 12-06010).

---

[5]  Plaintiffs have recently discovered that Lewiston is an officer of at least one of his daughter's companies, LR Management Service Corporation, and has entered into agreements on that company's behalf. *See*, Exh. 8. Curiously, Lewiston failed to disclose his position as an officer of that company on his filed and amended Statement of Financial Affairs. (Dkt. Nos. 40, 59 and 102 in Case No. 12-58599).

4

# ARGUMENT

## I. STANDARDS OF REVIEW.

### A. Constitutional Standing.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To satisfy this "case-or-controversy" requirement, a plaintiff must establish three elements: (1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue, meaning that the injury must be fairly traceable to the defendant's action; and (3) a likelihood that the injury would be redressed by a favorable decision of the court. *See, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

### B. Prudential Standing.

Unlike constitutional standing under Article III, prudential standing is a judicially created doctrine relied upon as a tool of "judicial self-governance." *Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). Prudential standing requirements preclude litigation in federal court where the harm alleged is a generalized grievance shared in substantially equal measure by all or a large class of citizens, or where the plaintiff rests his/her claims for relief on the legal rights or interests of third parties. *Id.* at 499. The second instance is consistent with Federal Rule of Civil Procedure 17(a) which requires that an action must be prosecuted in the name of the real party in interest. *See*, Fed. R. Civ. P. 17(a). Prudential standing requirements also preclude litigation in federal court where a plaintiff's complaint falls outside of interests to a protected or regulated by a statute or constitutional guarantee in question. *See, Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 475, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).

II. **APTCAM AND CAMAPT ABSOLUTELY HAVE CONSTITUTIONAL AND PRUDENTIAL STANDING TO MAINTAIN THEIR ADVERSARY PROCEEDINGS AGAINST LEWISTON AS THE MANAGING MEMBER OF APARTMENTS AT CAMBRIDGE.**

    A. <u>Members of A Limited Liability Company May Sue for Personal Damages Pursuant to Section 515 of the Michigan Limited Liability Company Act (M.C.L. § 450.4515).</u>

The Trustee only cites to limited provisions of the Michigan Limited Liability Company Act as well as non-binding cases from other states or involving other states' laws which are outside of our jurisdiction to contend that APTCAM and CAMAPT, as members of a limited liability company (i.e., Apartments at Cambridge), have no standing to sue because their alleged damages would somehow belong to Apartments at Cambridge (i.e., the claim would be a derivative action as opposed to a direct action).

The Trustee, however, has overlooked Section 515 of the Michigan Limited Liability Company Act which expressly provides that <u>a member of a limited liability company may sue for damages</u>. *See*, M.C.L. § 450.4515. Section 515 provides as follows:

> (1) **A member of a limited liability company may bring an action** in the circuit court of the county in which the limited liability company's principal place of business or registered office is located **to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member.** If the member establishes grounds for relief, the circuit court may issue an order or grant relief as it considers appropriate, including, but not limited to, an order providing for any of the following:
>
>     (a) The dissolution and liquidation of the assets and business of the limited liability company.
>
>     (b) The cancellation or alteration of a provision in the articles of organization or in an operating agreement.
>
>     (c) The direction, alteration, or prohibition of an act of the limited liability company or its members or managers.

6

> (d) The purchase at fair value of the member's interest in the limited liability company, either by the company or by any members responsible for the wrongful acts.
>
> (e) **An award of damages** to the limited liability company or **to the member**. An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued or within 2 years after the member discovers or reasonably should have discovered the cause of action under this section, whichever occurs first.
>
> (2) As used in this section, **"willfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member.** Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other member interests disproportionately as to the affected member. The term does not include conduct or actions that are permitted by the articles of organization, an operating agreement, another agreement to which the member is a party, or a consistently applied written company policy or procedure. *Id.* (Emphasis added).

Therefore, the Trustee's position fails as a matter of law inasmuch as APTCAM and CAMAPT, as members of Apartments at Cambridge, may absolutely file a direct suit for damages pursuant to Section 515 of the Michigan Limited Liability Company Act. *Id. See also, Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998) ("we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous") (internal quotations omitted).

The bottom line is that APTCAM and CAMAPT, as members of Apartments at Cambridge, may absolutely file a direct suit for damages pursuant to Section 515 of the Michigan Limited Liability Company Act. M.C.L. § 450.4515. This is the law by which the Trustee and the parties are bound, and any other result would impermissibly negate Section 515

7

of the Michigan Limited Liability Company Act. *Id.*

### B. APTCAM and CAMAPT Have Set Forth Direct and Distinct Claims for Damages.

As previously set forth in Plaintiffs' Brief in Opposition to the Trustee's Omnibus Objection to Plaintiffs' Proofs of Claim and in the Proofs of Claim themselves, APTCAM's and CAMAPT's Proofs of Claim are based upon their personal damages in connection with Lewiston's diversion of funds from Apartments at Cambridge. *See*, Exhs. 9-10. Specifically, APTCAM's and CAMAPT's Proofs of Claim state the basis for their claims against Lewiston as "[e]mbezzled funds and converted ownership interests" with the following explanation:

> [APTCAM and CAMAPT] maintain[] two adversary proceedings against Debtor, Richard Martin Lewiston ("Lewiston"): (1) Adversary Proceeding No. 12-06003-pjs pursuant to 11 U.S.C. § 523; and (2) Adversary Proceeding No. 12-06010-pjs pursuant to 11 U.S.C. § 727. As set forth in the Complaints of these Adversary Proceedings, **Lewiston embezzled funds and converted ownership interests belonging to [APTCAM and CAMAPT].**
>
> The amount[s] of [APTCAM's and CAMAPT's] claim[s] as of the date of filing [APTCAM's and CAMAPT's] Proof[s] of Claim [are] conservatively stated as [$2,500,000.00 and $1,250,000] with the qualifications that: (1) [APTCAM and CAMAPT have] not been provided with complete and updated books and records from Lewiston concerning the company(ies) in which [APTCAM and CAMAPT] maintain[] an ownership interest as well as each and every individual and entity who received funds and/or ownership interests belonging to [APTCAM and CAMAPT]; and (2) [APTCAM and CAMAPT are] in the process of retaining expert witnesses to perform forensic accounting and valuation analyses in connection with the value of [APTCAM's and CAMAPT's] ownership interest(s), [APTCAM's and CAMAPT's] embezzled funds and other related matters. Based upon the foregoing qualifications, [APTCAM and CAMAPT] reserve[] the right to amend and/or modify [their] Proof[s] of Claim as discovery is obtained and completed in [their] Adversary Proceedings. *Id.*

8

In further support of their Proofs of Claim, APTCAM and CAMAPT have attached their records confirming their respective net capital contributions in the amounts of $2,497,407.09 and $1,141,709.54. *See*, Exhs. 11-12. These capital contributions represent the funds that APTCAM and CAMAPT have invested in cash and lost by virtue of Lewiston's illegal, fraudulent and willfully unfair and oppressive conduct as set forth in their Complaint Objecting to Debtor's Discharge Pursuant to 11 U.S.C. § 523. *Id.* As such, these capital contributions represent damages belonging to APTCAM and CAMAPT and no other party. *Id.*

Tellingly, no other member of Apartments at Cambridge has filed any claims in connection with APTCAM's and CAMAPT's 37.50% combined ownership interests in Apartments at Cambridge. In fact, Lewiston's brother, Mickey Lewiston, and Lewiston's daughter, Leslie Lewiston Etterbeek, who own a combined 10.50% interest in Apartments at Cambridge, have not filed any proofs of claim in Lewiston's bankruptcy. *See*, Exh. 2. Furthermore, neither Lewiston's brother nor Lewiston's daughter has made any capital contributions beyond their initial capital contributions unlike APTCAM and CAMAPT. *See*, Exh. 6. Therefore, APTCAM and CAMAPT have absolutely alleged permissible damages unique to them and unrelated to the other members of Apartments at Cambridge.

### C. The Alter Ego/Piercing the Corporate Veil Doctrine Absolutely Applies to APTCAM and CAMAPT.

As set forth in Paragraphs 24, 33, 42, 46, 56 and 63 of the Complaint, Lewiston ran Apartments at Cambridge as his alter ego, completely disregarding the company form and operating agreement, and treating it as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit. Exh. 1 at ¶¶ 24, 33, 42, 46, 56, 63. As further alleged in the Complaint and confirmed by the underlying records, Lewiston issued checks from Apartments at Cambridge to himself and his affiliates, including

9

his family, in the aggregate amount of $23,773,783.31 which represented nearly 70% of the gross revenues generated by Apartments at Cambridge. *See*, Exhs. 6-7. Among these checks were the following, as but a few examples: (1) $390,000 to his personal assistant Kelly Ann Spencer; nearly $590,000 to Lewiston-Crescentini Homes, Inc., a company owned in part by Lewiston's son, Jason Lewiston, even though it had no involvement whatsoever in Apartments at Cambridge; (3) nearly $4.2 million to Outdoor Solutions, Inc., a landscape contracting company owned by his son-in-law, Jeffrey Etterbeek, who is a tennis instructor by trade, and such amount is as much as four times the amount of money that the landscaping should have cost; and (4) more than $3.2 million to companies allegedly owned by his daughter (although he serves as an officer of at least one such company even though he has failed to disclose this fact to the Court as was required in his filed and amended Statement of Financial Affairs. *Id.*; Exh. 1 at ¶¶ 33, 63; Exh. 8; Dkt. Nos. 40, 59 and 102 in Case No. 12-58599.

In an attempt to avoid APTCAM's and CAMAPT's allegations and the supporting evidence, the Trustee erroneously contends that their allegations under the alter ego/piercing the corporate veil doctrine somehow cannot apply here because the doctrine only applies to third parties.

> The basic law for piercing the corporate veil in Michigan is as follows:
>
> > We recognize the general principle that in Michigan separate entities will be respected. See *Klager v Robert Meyer Co*, 415 Mich 402; 329 NW2d 721 (1982), *Finley v Union Joint Stock Land Bank of Detroit*, 281 Mich 214; 274 NW2d 768 (1937), and *Gledhill v Fisher & Co*, 272 Mich 353; 262 NW 371 (1935).
> >
> > However, the fiction of a distinct corporate entity separate from its stockholders is a convenience introduced in the law to subserve the ends of justice. When this fiction is invoked to subvert justice, it is ignored by the courts. *Paul v University Motor Sales Co*, 283 Mich 587, 602; 278 NW 714 (1938).

10

*Wells v. Firestone Tire and Rubber Co.*, 421 Mich. 641, 650; 364 N.W.2d 670 (1985).

Contrary to the Trustee's argument, the alter ego/piercing the corporate veil doctrine absolutely applies to individual owners of a company, notwithstanding Section 515 of the Michigan Limited Liability Company Act. Specifically, the Michigan Supreme Court has held as follows in direct contravention of the Trustee's argument:

> Although traditionally the doctrine of "piercing the corporate veil" has been applied to protect a corporation's creditors, or other outsiders, where the corporate entity has been used to avoid legal obligations, *People ex rel Attorney General v Michigan Bell Telephone Co*, 246 Mich 198; 224 NW 438 (1929), **Michigan courts have recognized that it may be appropriate to invoke the doctrine for the benefit of a shareholder where the equities are compelling.** See, *e.g.*, *Montgomery v Central National Bank & Trust Co of Battle Creek*, 267 Mich 142; 255 NW 274 (1934).

*Wells*, 421 Mich. at 650-651 (emphasis added).

As repeatedly stated herein, Section 515 of the Michigan Limited Liability Company Act expressly provides that a member of a limited liability company may sue for damages based upon a managing member's (e.g., Lewiston's) illegal, fraudulent and willfully unfair and oppressive conduct. *See*, M.C.L. § 450.4515. This is the public policy/law of the State of Michigan. *Id.* Thus, while it may be true in general (i.e., a majority of cases) that the alter ego/piercing the corporate veil doctrine arises in situations involving non-owner creditors, this is not exclusively the case nor is the alter ego/piercing the corporate veil exclusive to non-owner creditors as the Trustee tacitly acknowledges. *Wells*, 421 Mich. at 650-651.

As for whether it is appropriate to pierce the corporate veil in this case in connection with APTCAM's and CAMAPT's claims, this is a question of fact and not a question of law. *See*, *Foodland Distributors v. Al-Naimi*, 220 Mich. App. 453, 456; 559 NW2d 379 (1996) ("There is no single rule delineating when the corporate entity may be disregarded"). In assessing whether

11

12-06003-pjs   Doc 86   Filed 07/22/13   Entered 07/22/13 13:24:03   Page 14 of 15

a corporate entity may be disregarded, "the entire spectrum of relevant fact forms the background for such inquiry." *Klager v Robert Meyer Co.*, 415 Mich. 402, 411-412; 329 N.W.2d 721 (1982). To assist in such analysis, the Michigan Court of Appeals has created the following three-pronged test whereby the corporate veil is pierced if: (1) the entity is a mere instrumentality of another; (2) the entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss or injury. *See, Foodland Distributors*, 220 Mich App at 457, *citing, SDC Chemical Distributors, Inc. v Medley*, 203 Mich. App. 374, 381; 512 N.W.2d 86 (1994).

As set forth above, APTCAM and CAMAPT have sufficiently pled allegations that satisfy this test. Exh. 1 at ¶¶ 24, 33, 42, 46, 56, 63. Furthermore, the allegations are supported by evidence, even at this early stage in the case. *See*, Exhs. 1-12.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny the instant motion in its entirety and award to Plaintiffs all costs and attorney fees incurred in being forced to defend against it. A proposed order is attached hereto as Exhibit 13.

Respectfully submitted,

| MORGANROTH & MORGANROTH, PLLC | SULLIVAN, WARD, ASHER & PATTON, P.C. |
|---|---|
| By: /s/ Daniel E. Harold | By: /s/ Wallace M. Handler |
| MAYER MORGANROTH (P17966) | WALLACE M. HANDLER (P14598) |
| DANIEL E. HAROLD (P61841) | Of counsel to Plaintiffs |
| Counsel for Plaintiffs | 1000 Maccabees Center |
| 344 North Old Woodward Avenue, Suite 200 | 25800 Northwestern Highway |
| Birmingham, Michigan 48009 | Southfield, MI 48075-1000 |
| (248) 864-4000 | (248) 746-0700 |
| dharold@morganrothlaw.com | whandler@swappc.com |

Dated: July 22, 2013