## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In the Matter of:

RICHARD M. LEWISTON,

               Debtor.

_____/

Bankruptcy Case No. 12-58599
Hon. Philip J. Shefferly
Chapter 7

APARTMENTS AT CAMBRIDGE COMPANY,
L.L.C., MICKEY SHAPIRO TRUST, ASA SHAPIRO
DECLARATION OF TRUST, ILA I, L.L.C., ILA II,
L.L.C., APTCAM L.L.C., and CAMAPT, L.L.C.

          Plaintiffs,

vs.

                            Adv. Pro. No. 12-06003

RICHARD M. LEWISTON,

          Defendant,

and

GENE R. KOHUT, Chapter 7 Trustee for the
Bankruptcy Estate of Richard Martin Lewiston,

          Nominal Defendant.

_____/

## ANSWER IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

NOW COME Plaintiffs, by and through their attorneys, Morganroth & Morganroth, PLLC and Sullivan, Ward, Asher & Patton, P.C., of counsel, and, for their Answer in Opposition to Motion for Summary Judgment, hereby state as follows.

1.  In Answer to Paragraph 1, Plaintiffs deny the allegations contained therein for reason untrue as a matter of law and fact.

2.  In Answer to Paragraph 2, Plaintiffs deny the allegations contained therein for reason untrue as a matter of law and fact.

3.  In Answer to Paragraph 3, Plaintiffs deny the allegations contained therein for reason untrue as a matter of law and fact.

4.  In Answer to Paragraph 4, Plaintiffs deny the allegations contained therein for reason untrue as a matter of law and fact.

5.  In Answer to Paragraph 5, Plaintiffs deny that the brief has any basis in law or fact for reason untrue. .

6.  In Answer to Paragraph 6, Plaintiffs deny the allegations contained therein for reason untrue as a matter of law and fact.

7.  In Answer to Paragraph 7, no answer is required and the law on such matters will prevail.

This Answer in Opposition is further supported by an accompanying Brief in Opposition.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court deny the instant motion in its entirety and award to Plaintiffs all costs and attorney fees incurred in being forced to defend against it. A proposed order is attached to the accompanying Brief in Opposition.

1

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Daniel E. Harold
MAYER MORGANROTH (P17966)
DANIEL E. HAROLD (P61841)
Counsel for Plaintiffs
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan  48009
(248) 864-4000
dharold@morganrothlaw.com

Dated:  August 1, 2013

SULLIVAN, WARD, ASHER & PATTON, P.C.
By: /s/ Wallace M. Handler
WALLACE M. HANDLER (P14598)
Of counsel to Plaintiffs
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
(248) 746-0700
whandler@swappc.com

2

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In the Matter of:

RICHARD M. LEWISTON,

        Debtor.

_____/

APARTMENTS AT CAMBRIDGE COMPANY,
L.L.C., MICKEY SHAPIRO TRUST, ASA SHAPIRO
DECLARATION OF TRUST, ILA I, L.L.C., ILA II,
L.L.C., APTCAM L.L.C., and CAMAPT, L.L.C.

        Plaintiffs,

vs.

RICHARD M. LEWISTON,

        Defendant,

and

GENE R. KOHUT, Chapter 7 Trustee for the
Bankruptcy Estate of Richard Martin Lewiston,

        Nominal Defendant.

_____/

Bankruptcy Case No. 12-58599
Hon. Philip J. Shefferly
Chapter 7

Adv. Pro. No. 12-06003

## BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## STATEMENT OF FACTS

Mickey Shapiro and his father, Asa Shapiro (collectively, the "Shapiros"), have a business relationship with Lewiston that extends back many years. (Dkt. No. 1 at ¶ 14)[1]. As part of that business relationship, the Shapiros invested large sums of money in several real estate companies that Lewiston was managing through the various Plaintiff entities which are creditors of Lewiston in connection with Lewiston's bankruptcy. *Id.* at ¶ 15. The Shapiros' investments in the Lewiston-managed companies are as follows:

- Plaintiffs, ILA I, L.L.C. and ILA II, L.L.C. (collectively, the "ILA Entities"), maintain a collective 50% ownership interest in Island Lake Associates ("Island Lake"), a real estate partnership (Exh. 2);

- Island Lake maintains a 50% ownership interest in the Cambridge Development Associates ("Cambridge Development") real estate partnership such that ILA Entities maintain a collective 25% ownership interest in Cambridge Development (Exh. 3);

- Plaintiffs, Mickey Shapiro Trust and Asa Shapiro Declaration of Trust (collectively, the "Shapiro Trusts"), maintain a collective 34% ownership interest in the Fairway West Associates ("Fairway West") real estate partnership (Exh. 4);

- Fairway West maintains a 50.93% ownership interest in the Founders Woods Associates ("Founders Woods") real estate partnership such that the Shapiro Trusts maintain a collective 17.32% ownership interest in Founders Woods (Exh. 5); and

- Plaintiffs, APTCAM, L.L.C. ("APTCAM") and CAMAPT, L.L.C. ("CAMAPT"), maintain a collective 37.50% ownership interest in Plaintiff, Apartments at Cambridge Company, L.L.C. ("Apartments at Cambridge"), a limited liability real estate company (Exh. 6). *Id.*

During the first part of 2010, it came to Mickey Shapiro's attention (at that time and through the present, Mickey Shapiro manages his and his father's business affairs in connection with Lewiston) that Lewiston was being sued by his longtime business partners, the Smith family

---

[1]     This is Plaintiffs' Complaint Objecting to Debtor's Discharge Pursuant to 11 U.S.C. § 523 which is attached hereto as Exhibit 1. In addition, references herein to the Bankruptcy Code are to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, as amended from time to time, and are hereafter referred to as "Section _____."

1

(Case No. 108330-CZ in the Oakland County Circuit Court before the Honorable Martha D. Anderson, the "Smith Action"), for millions of dollars in connection with Lewiston's alleged mismanagement and diversion of funds from numerous companies, including the companies in which the Plaintiff entities had invested. *Id.* at ¶ 16. Of paramount concern to Mickey Shapiro at that time was Apartments at Cambridge, a condominium development project in Canton Township, Michigan which had been hemorrhaging money and carried a large mortgage balance of more than $2 million with its lender. *Id.* at ¶ 17.

As Mickey Shapiro raised his concerns to Lewiston about the Smith family's allegations and whether the Shapiros' entities (APTCAM and CAMAPT) had contributed more than their pro rata share of capital to Apartments at Cambridge, Lewiston provided Shapiro with a memorandum dated April 20, 2010 representing that Lewiston had contributed capital in the amount of $2,199,422 to Apartments at Cambridge through 2009 and that all of the members of Apartments at Cambridge had contributed their pro rata shares. *Id.* at ¶ 18; Exh. 7.

In further response to the Shapiros' concerns, Lewiston issued a June 15, 2010 memorandum to Mickey Shapiro purporting to show $10,807,247 in supposed loans payable owed by Apartments at Cambridge, $2,293,000 of which came from Founders Woods, Cambridge Development and Island Lake. Exh. 1 at ¶ 19; Exh. 8. The Shapiros were completely surprised and blindsided by the purported loans set forth in Lewiston's June 15, 2010 memorandum, and such loans were of great concern to the Shapiros because: (1) Founders Woods, Cambridge Development and Island Lake had no involvement with Apartments at Cambridge; (2) Lewiston had no authority or authorization to borrow any funds from those partnerships; and (3) the partnerships should have distributed those funds to the partners, which include the Plaintiff entities. Exh. 1 at ¶¶ 19-20; Exhs. 2, 4 at § 5.2; Exhs. 3, 5 at § 5.3; Exh. 6 at

2

§§ 4.1, 5.3.

Instead of answering for the so-called loans set forth in his June 15, 2010 memorandum, Lewiston continued to make capital calls upon the members of Apartments at Cambridge, but in reality only upon APTCAM, CAMAPT and another member[2] inasmuch as the other members included his brother, Mickey Lewiston, his daughter, Leslie Lewiston Etterbeek, and a company with whose principal Lewiston was engaged in protracted litigation. *Id.* at ¶ 21. Lewiston used the purported loans payable owed by Apartments at Cambridge for the purpose of issuing capital calls to effectively hold APTCAM and CAMAPT hostage and prevent them and the other Plaintiffs from pursuing any action against Lewiston for mismanaging Apartments at Cambridge and the other companies that they co-owned with Lewiston because the Shapiros had signed guarantees on the Apartments at Cambridge mortgage such that the outstanding balance on the mortgage would be called in by the bank in the event that Lewiston stopped operating the Apartments at Cambridge project and/or failed to use the proceeds from condominium sales to repay the mortgage. *Id.* at ¶ 22.

To further keep APTCAM and CAMAPT from taking action against him, Lewiston issued a memorandum on August 25, 2010 stating that he would be issuing a capital call to the members of Apartments at Cambridge on the basis that Founders Woods and another company that Lewiston was managing had demanded repayment of more than $2.5 million in purported loans to Apartments at Cambridge. *Id.* at ¶ 23; Exh. 9. The reality of the situation, as Plaintiffs realized from Lewiston's memoranda and conduct in response to their concerns, was that Lewiston had been running the other companies in which Plaintiffs maintain ownership interests with Lewiston as his alter egos, completely disregarding the company forms and agreements, and

---

[2]      That member is Richards-Pitt, L.L.C. which is a Plaintiff in Adversary Proceeding Nos. 12-06004-pjs and 12-06010-pjs pursuant to Sections 523 and 727.

treating such companies as his own personal piggy banks where he consistently issued checks without authorization for his or his family's own benefit. *Id.* at ¶ 24.

Ultimately, Apartments at Cambridge paid off its mortgage at which time Lewiston lost his sole leverage in answering for his mismanagement of the companies in which Plaintiffs maintain ownership interests. Exh. 1 at ¶ 25. As a result, Lewiston voluntarily filed his Chapter 7 bankruptcy petition on August 13, 2012. *Id.*

Plaintiffs timely filed the instant action against Lewiston pursuant to Sections 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6) stemming from the general fact that Lewiston not only diverted and took millions of dollars rightfully belonging to Plaintiffs, but he also transferred his assets to his family -- money and ownership interests in various companies -- in order to avoid payment on his debts to Plaintiffs and others. Exh. 1.

## ARGUMENT

### I.     STANDARD OF REVIEW.

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment may only be granted where the moving party conclusively demonstrates that there is no genuine issue of material fact and that it is entitled to judgment in its favor as a matter of law. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Courts must view the evidence in the light most favorable to the non-moving party while drawing all reasonable inferences in favor of the non-moving party. *See, Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where different ultimate inferences between the parties may be drawn, the case is not one for summary judgment. *See, United States v. Diebold*, 369 U.S. 654, 655 (1962). Courts may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes to determine the truth of a matter. *See, Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 247-257 (1986). Rather, the "relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See, Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000), *quoting, Anderson*, 477 U.S. at 251-252[3].

## II.  PLAINTIFFS HAVE STANDING AND ARE THE REAL PARTIES IN INTEREST[4].

Lewiston's contention that Plaintiffs' claims somehow belong to the companies in which they are owners fails as a matter of law.

### A.  The ILA Entities and Shapiro Trusts Have Standing and Are the Real Parties in Interest in Connection with the Island Lake, Cambridge Development, Fairway West and Founders Woods Partnerships.

With respect to the partnerships, Section 26 of the Michigan Uniform Partnership Act provides that "**[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property.**" M.C.L. § 449.26 (emphasis added). Therefore, as a matter of law, the ILA Entities and the Shapiro Trusts have a vested interest in the profits and surpluses of the partnerships in which they invested. *Id.*; *see also, Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998) ("we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous") (internal quotations omitted).

Specifically, the ILA Entities have a vested interest in the profits and surplus of Island Lake, which includes the profits and surplus owed to Island Lake as a partner of Cambridge

---

[3]     *Cf., Isquith v. Middle S. Util., Inc.*, 847 F.2d 186, 198-199 (5th Cir. 1988), *cert. den.*, 488 U.S. 926 (1988) ("Just because a movant makes [a] claim, however, does not mean that the claim is true. And if it is not--if the movant wrongly characterized the information in the record--the movant has not shown the absence of a genuine issue which would entitle it to summary judgment").

[4]     Lewiston's argument is really an argument of law, not a Rule 56 argument.

Development. *See*, Exhs. 2-3 at Art. VI. Similarly, the Shapiro Trusts have a vested interest in the profits and surplus of Fairway West, which includes the profits and surplus owed to Fairway West as a partner of Founders Woods. *See*, Exhs. 4-5 at Art. VI.

Lewiston cannot escape this legal reality which he even acknowledged in a June 18, 2010 memorandum to Mickey Shapiro representing that repayments on purported loans to Apartments at Cambridge by Founders Woods would be distributed by Founders Woods to Fairway West to satisfy the debts owed to the Shapiro Trusts. *See*, Exh. 10. Thus, Lewiston has no basis in law or fact for challenging the ILA Entities' and the Shapiro Trusts' standing to sue as the real parties in interest. *Id.* In fact, Lewiston tellingly listed the ILA Entities and the Shapiro Trusts as his creditors in his Schedule F filed with the Court on August 27, 2012. (Dkt. No. 40 in Case No. 12-58599-pjs).

Furthermore, although discovery is only at the initial stages, the ILA Entities' Proofs of Claim, which are each in the amount of $75,000, are substantiated by the K-1 schedules to the most recent Island Lake tax return (2007) in the ILA Entities' possession which list the ILA Entities' respective capital accounts at $88,904 and $88,912. *See*, Exhs. 11-13. The Shapiro Trusts' Proofs of Claim, which are each in the amount of $420,000, are likewise substantiated by the K-1 schedules to the most recent Fairway West tax return (2008) that were in the Shapiro Trusts' possession at the time which list the Shapiro Trusts' respective capital accounts at $420,485 and $420,486. *See*, Exhs. 14-16. Therefore, the ILA Entities and the Shapiro Trusts have standing to sue and are the real parties in interest in connection with their claims.

### A. APTCAM and CAMAPT Have Standing and Are the Real Parties in Interest in Connection with Apartments at Cambridge.

Section 515 of the Michigan Limited Liability Company Act expressly provides that a member of a limited liability company may sue for damages:

6

(1) **A member of a limited liability company may bring an action** in the circuit court of the county in which the limited liability company's principal place of business or registered office is located **to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member**. If the member establishes grounds for relief, the circuit court may issue an order or grant relief as it considers appropriate, including, but not limited to, an order providing for any of the following:

    (a) The dissolution and liquidation of the assets and business of the limited liability company.

    (b) The cancellation or alteration of a provision in the articles of organization or in an operating agreement.

    (c) The direction, alteration, or prohibition of an act of the limited liability company or its members or managers.

    (d) The purchase at fair value of the member's interest in the limited liability company, either by the company **or by any members responsible for the wrongful acts**.

    (e) **An award of damages** to the limited liability company or **to the member**. An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued or within 2 years after the member discovers or reasonably should have discovered the cause of action under this section, whichever occurs first.

(2) As used in this section, **"willfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the member as a member.** Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other member interests disproportionately as to the affected member. The term does not include conduct or actions that are permitted by the articles of organization, an operating agreement, another agreement to which the member is a party, or a consistently applied written company policy or procedure. M.C.L. § 450.4515 (emphasis added).

7

Therefore, as a matter of law, APTCAM and CAMAPT are the real parties in interest and absolutely have standing to file a direct suit for damages. *Id. See also, Menuskin*, 145 F.3d at 768 ("we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous") (internal quotations omitted).

Although Lewiston contends that APTCAM's and CAMAPT's claims somehow are improper because Apartments at Cambridge is also a Plaintiff in this action, APTCAM's and CAMAPT's Proofs of Claim set forth separate and distinct claims for damages. Specifically, APTCAM's and CAMAPT's claims are based upon the capital contributions that they made from their own personal funds to Apartments at Cambridge in the respective amounts of $2,497,407.09 and $1,141,709.54. *See*, Exhs. 17-20. Therefore, APTCAM and CAMAPT have standing to sue and are the real parties in interest in connection with their claims against Lewiston.

C.  **Plaintiffs Have Standing and Are the Real Parties in Interest Pursuant to the Alter Ego/Piercing the Corporate Veil Doctrine.**

Lewiston's argument also fails as a matter of law and fact by virtue of the alter ego/piercing the corporate veil doctrine. The basic law for piercing the corporate veil in Michigan is as follows:

> We recognize the general principle that in Michigan separate entities will be respected. See *Klager v Robert Meyer Co*, 415 Mich 402; 329 NW2d 721 (1982), *Finley v Union Joint Stock Land Bank of Detroit*, 281 Mich 214; 274 NW2d 768 (1937), and *Gledhill v Fisher & Co*, 272 Mich 353; 262 NW 371 (1935).
>
> However, the fiction of a distinct corporate entity separate from its stockholders is a convenience introduced in the law to subserve the ends of justice. When this fiction is invoked to subvert justice, it is ignored by the courts. *Paul v University Motor Sales Co*, 283 Mich 587, 602; 278 NW 714 (1938).

8

\*　　　\*　　　\*

> Although traditionally the doctrine of "piercing the corporate veil" has been applied to protect a corporation's creditors, or other outsiders, where the corporate entity has been used to avoid legal obligations, *People ex rel Attorney General v Michigan Bell Telephone Co*, 246 Mich 198; 224 NW 438 (1929), **Michigan courts have recognized that it may be appropriate to invoke the doctrine for the benefit of a shareholder where the equities are compelling.** See, *e.g.*, *Montgomery v Central National Bank & Trust Co of Battle Creek*, 267 Mich 142; 255 NW 274 (1934).

*Wells v. Firestone Tire and Rubber Co.*, 421 Mich. 641, 650-651; 364 N.W.2d 670 (1985) (emphasis added).

The question of applying the alter ego/piercing the corporate veil doctrine is a question of fact and <u>not</u> a question of law. *See*, *Foodland Distributors v. Al-Naimi*, 220 Mich. App. 453, 456; 559 N.W.2d 379 (1996) ("There is no single rule delineating when the corporate entity may be disregarded"). In assessing whether a corporate entity may be disregarded, "**the entire spectrum of relevant fact forms the background for such inquiry.**" *Klager v Robert Meyer Co.*, 415 Mich. 402, 411-412; 329 N.W.2d 721 (1982) (emphasis added). To assist in such analysis, the Michigan Court of Appeals has created the following three-pronged test whereby the corporate veil is pierced if: (1) the entity is a mere instrumentality of another; (2) the entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss or injury. *See*, *Foodland Distributors*, 220 Mich App at 457, *citing*, *SDC Chemical Distributors, Inc. v Medley*, 203 Mich. App. 374, 381; 512 N.W.2d 86 (1994).

As set forth in Paragraphs 24, 33(A), 42, 46, 56 and 63(A) of Plaintiffs' Complaint, Lewiston had been running the other companies in which Plaintiffs maintain ownership interests with Lewiston as his alter egos, completely disregarding the company forms and agreements, and treating such companies as his own personal piggy banks where he consistently issued checks

9

without authorization for his or his family's own benefit. Exh. 1 at ¶¶ 24, 33(A), 42, 46, 56, 63(A). Again, although discovery is only at the initial stages, Plaintiffs' allegations are confirmed by substantial underlying evidence.

In the first place, the partnerships managed by Lewiston in which the ILA Entities and the Shapiro Trusts invested ceased business operations years ago. *See*, Exhs. 21-24. Specifically, Founders Woods last generated business revenue seven years ago, Fairway West has not generated business revenue in at least 13 years, Island Lake has not generated business revenue in at least 13 years and Cambridge Development last generated business revenue 12 years ago. *Id.*

Instead of dissolving the partnerships and distributing the proceeds as required pursuant to the partnership agreements (*see*, Exhs. 2-5 at Art. IX), Lewiston has kept the partnership bank accounts open in order to issue checks for his own purposes and benefit. For instance, Lewiston's filed and amended Schedule B lists purported accounts receivable in the aggregate amount of $2,360,603 from Cherry Hill/Denton Group, L.L.C., Wellesley Building Company, L.L.C., and Wellesley Building Company II, Inc. (Dkt. No. 102 in Case No. 12-58599-pjs). However, Lewiston was caught giving false testimony on May 20, 2009 in connection with those accounts receivable. *See*, Exh. 25 at 246-271; Exhs. 26-27. During his direct examination, Lewiston testified that he personally loaned the money from his personal account as reflected in a memo that Lewiston prepared. *Id.* Upon being cross-examined and presented with just a sampling of the alleged checks (Lewiston to this day has not produced the remainder of the checks), Lewiston was forced to admit that the checks were not from his own account but, rather, from the accounts of Fairways West and Founders Woods. *Id.* Furthermore, the checks show Lewiston's handwritten instructions to his accountant, Ely Tama, to improperly account for the

10

checks as distributions to a man he was suing to reimburse him for the checks. *Id.* Rather than correct his false testimony, Lewiston, a licensed attorney, has provided the Trustee with an updated version of the same memorandum upon which his false testimony was founded. *See,* Exh. 28.

As but another example, Lewiston and the Trustee contend that Lewiston deposited funds belonging to Founders Woods, Cambridge Development and Island Lake into Apartments at Cambridge in the respective amounts of $2,166,000, $115,000 and $62,000. *See, e.g.,* Exh. 29. Although the partnership agreements for Founders Woods, Cambridge Development and Island Lake required Lewiston to obtain unanimous consent from his partners in order to invest partnership funds outside of the partnership, Lewiston has previously testified under oath that he did not have unanimous consent. *See,* Exhs. 2, 4 at § 5.2; Exhs. 3, 5 at § 5.3; Exh. 6 at §§ 4.1, 5.3.; Exh. 30 at 219; Exh. 31 at 262-263. Furthermore, contrary to Lewiston's admission as to diverting $2,166,000 from Founders Woods to Apartments at Cambridge, the actual checks and deposits show a balance of $2,908,000. *See,* Exhs. 32-33. In other words, there is at least a substantial sum in the amount of $742,000 which is unaccounted for by Lewiston. *Id.*

As a final example, Lewiston issued checks from Apartments at Cambridge to himself and his affiliates, including his family, in the aggregate amount of $23,773,783.31 which represented nearly 70% of the gross revenues generated by Apartments at Cambridge. *See,* Exhs. 34-36. Among these checks were the following, as but a few examples: (1) $390,000 to his personal assistant Kelly Ann Spencer; nearly $590,000 to Lewiston-Crescentini Homes, Inc., a company owned in part by Lewiston's son, Jason Lewiston, even though it had no involvement whatsoever in Apartments at Cambridge; (3) nearly $4.2 million to Outdoor Solutions, Inc., a landscape contracting company owned by his son-in-law, Jeffrey Etterbeek, who is a tennis

instructor by trade, and such amount is as much as four times the amount of money that the landscaping should have cost; and (4) more than $3.2 million to companies allegedly owned by his daughter (although he serves as an officer of at least one such company, LR Management Service Corporation, even though he has failed to disclose this fact to the Court as was required in his filed and amended Statement of Financial Affairs). *Id.*; Exh. 1 at ¶¶ 33, 63; Exh. 37; (Dkt. Nos. 40, 59 and 102 in Case No. 12-58599-pjs).

In sum, genuine issues of material fact exist as to whether the ILA Entities, Shapiro Trusts, APTCAM and CAMAPT co-owned and invested with Lewiston were really Lewiston's alter egos, notwithstanding the law and public policy of Michigan permitting partners and members to sue as the real parties in interest in connection with illegal, fraudulent or willfully unfair and oppressive conduct.

## III.  PLAINTIFFS HAVE PROPERLY PLED CLAIMS UNDER SECTION 523.

Although Lewiston attempts to categorize his argument as one of "failure to state a claim upon which relief can be granted," Lewiston's contention is that Plaintiffs have somehow failed to plead their claims under Section 523 with particularity pursuant to Rule 9(b).  As a matter of law, Lewiston's contention is untimely and Lewiston waived any arguments under Rule 9(b) inasmuch as he answered Plaintiffs' complaint in lieu of filing a Rule 12(e) motion.

Specifically, Plaintiffs' Complaint was filed on November 19, 2012. *See*, Exh. 1.  Instead of filing a Rule 12 motion on the basis of Rule 9(b), Lewiston filed an Answer to Plaintiffs' Complaint on December 17, 2012.  (Dkt. No. 8, attached hereto as Exhibit 38).  If Lewiston believed that Plaintiffs' Complaint did not comply with Rule 9(b), he was required to file a motion pursuant to Rule 12(e) which provides, in relevant part, as follows:

> (e) MOTION FOR A MORE DEFINITE STATEMENT. A party may move
> for a more definite statement of a pleading to which a responsive

pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. **The motion must be made before filing a responsive pleading** and must point out the defects complained of and the details desired. Fed. R. Civ. P. 12(e) (emphasis added).

This issue was recently addressed by Judge Murphy III of the District Court:

> It would seem that Defendant, by not raising the Rule 9(b) challenge earlier, has waived any challenge it might have had. *See Davsko v. Golden Harvest Prods., Inc.*, 965 F. Supp. 1467, 1474 (D. Kan. 1997) ("A rule 9(b) objection is waived unless made as a separate motion prior to or concurrent with the filing of a responsive pleading."). **The purpose of the heightened pleading standard is to assure that defendants are apprised of the allegations against them in sufficient detail to frame an adequate responsive pleading.** *See Todaro v. Orbit Int'l Travel, Ltd.*, 755 F. Supp. 1229, 1234 (S.D.N.Y. 1991). **Since Defendant has already answered the complaint, it apparently had enough information from the allegations to form an answer, and any objection to the sufficiency of the pleaded allegations is now waived.** *Kujat v. Harbor Freight Tools USA, Inc.*, Case No. 09-cv-14183, 2010 U.S. Dist. LEXIS 89205 at *7-8 (E.D. Mich. Aug. 30, 2010) (emphasis added, attached hereto as Exhibit 39).

In addition to the facts and underlying records set forth in Plaintiffs' Complaint, the Statement of Facts and Section III above which are hereby incorporated by reference, Plaintiffs' allegations are further confirmed by the Independent Expert Report provided in the Smith Action[5]. *See*, Exhs. 1, 40; *see supra* § III. The Independent Expert Report, although specific to the Smiths, confirms that Lewiston diverted millions from companies which include the very companies in which Plaintiffs respectively invested: Island Lake, Cambridge Development, Fairway West, Founders Woods and Apartments at Cambridge. *Id.* Thus, not only have Plaintiffs properly pled claims under Section 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6), but Plaintiffs' claims are corroborated by substantial evidence even at this early stage in discovery.

---

[5]     The documents provided to the Smiths' expert and summarized in his Expert Report are not attached hereto due to their volume, but they are hereby incorporated by reference.

13

*Id.* Furthermore, Lewiston's motion, aside from its legal arguments, simply contains factual contentions which, on their face, would at best present genuine issues of material fact which contradict Lewiston's request for summary judgment on its face.

With respect to Plaintiffs' claim pursuant to Section 523(a)(2)(A) for false pretenses, false representations and actual fraud, the legal elements are as follows:

> "A 'false pretense' involves an implied misrepresentation or conduct intended to create or foster a false impression. **A false pretense has been defined to include a 'mute charade,' where the debtor's conduct is designed to convey an impression without oral representation.**" *Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 433 (Bankr. S.D. Ohio 2007) (quotation marks and citation omitted). **It has also been described as "usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction . . . ."** *Evans v. Dunston (In re Dunston)*,117 B.R. 632, 641 (Bankr. D. Colo. 1990), *aff'd in part and rev'd in part on other grounds*, 146 B.R. 269 (D. Colo. 1992). **The failure to disclose a material fact can form the basis of either a material misrepresentation or false pretense.** *See Semaan v. Allied Supermarkets, Inc.*, 951 F.2d 718, 728 (6th Cir. 1991) ("That such deception takes the form of an intentional nondisclosure of a material fact or an implied representation makes no difference."). **A debtor's silence may also "create a false impression which would be actionable under § 523(a)(2)(A) . . . ."** *Brann v. Oxford (In re Oxford)*, 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010) (citation omitted)." *In re Hermoyian*, 466 B.R. 348, 377 (Bankr. E.D. Mich. 2012) (emphasis added).

In addition, actual fraud is not limited to misrepresentations and misleading omissions as it **"encompasses any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another."** *Id.* at 380 (internal quotation marks and citations omitted) (emphasis in original), *citing, In re Stollman*, 404 B.R. 244, 257 (Bankr. E.D. Mich. 2009); *In re Vitanovich*, 259 B.R. 873, 877 (6th Cir. B.A.P. 2001); *McClellan v. Cantrell*,

14

217 F.3d 890 (7th Cir. 2000)[6].

Plaintiffs have clearly pled an actionable claim for false pretenses, false representations and actual fraud pursuant to Section 523(a)(2)(A) in Count I of their Complaint which contains the following allegations, among others, which satisfy the elements of Section 523(a)(2)(A).

- For the years 2006 forward, the tax returns and K-1 forms prepared for the companies in which Plaintiffs maintain ownership interests with Lewiston reflected so-called intercompany loans which, in reality, were the funds that Lewiston diverted for his or his family's own benefit.

- Lewiston issued memoranda dated April 20, 2010, June 15, 2010 and August 25, 2010 misrepresenting and misstating many such intercompany loans as loans due from Apartments at Cambridge to Lewiston and/or related companies so that Lewiston and his family could seek repayments to which they were not entitled. As but a few examples, Lewiston diverted well in excess of $8 million to Apartments at Cambridge from other companies that he was managing -- including Cambridge Development, Island Lake, Fairway West and Founders Woods in which Plaintiffs maintain ownership interests and all of which are listed by Lewiston as creditors in this bankruptcy -- even though: (a) such transfers were forbidden by those companies' respective partnership, operating and shareholder agreements; (b) Lewiston improperly booked many such transfers as loans made by Lewiston despite the fact that the monies came from those other companies and reflected other parties' ownership interests; and (c) Lewiston reimbursed himself for many such transfers -- Lewiston received checks totaling more than $6.6 million -- despite the fact that they came from those other companies and reflected other parties' ownership interests and therefore are not accounts receivable of Lewiston, but rather, those of the companies from which the monies were transferred and their members, partners, or shareholders, as the case may be.

- Lewiston used the purported loans payable owed by Apartments at Cambridge for

---

[6] As for the element of intent, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally" as these elements refer to the opposing party's state of mind. *United States ex. Rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503-507 (6th Cir. 2007). "Whether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard." *In re Rembert*, 141 F.3d 277, 281 (6th Cir. 1998)), *citing*, *Field v. Mans*, 516 U.S. 59, 74-75 (1995). *See also*, *In re Woods*, 458 B.R. 898, 901-902 (2011) ("**Intent to deceive may be inferred from a '[r]eckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation'**") (emphasis added), *quoting*, *In re Copeland*, 291 B.R. 740, 786 (Bankr. E.D. Tenn. 2003) (citations omitted). *Cf.*, *In re Holmes*, 414 B.R. 115, 130-131 (2009) (an admission that the debtor would not repay his creditor in and of itself establishes intent under § 523(a)(2)(A)).

15

the purpose of issuing capital calls to effectively hold APTCAM and CAMAPT hostage and prevent them and the other Plaintiffs from pursuing any action against Lewiston for mismanaging Apartments at Cambridge and the other companies that they co-owned with Lewiston because the Shapiros had signed guarantees on the Apartments at Cambridge mortgage such that the outstanding balance on the mortgage would be called in by the bank the event that Lewiston stopped operating the Apartments at Cambridge project and/or failed to use the proceeds from condominium sales to repay the mortgage.

- To further avoid his debt to Plaintiffs and obtain a bankruptcy discharge, Lewiston transferred his assets to his wife, children and his children's spouses within one year, but not more than six years, from the date of filing his bankruptcy petition in this matter. Such assets include more than $32 million in net income declared by Lewiston in 2006 as well as $9 million in U.S. Treasury Bills that Lewiston liquidated in 2007. Such assets further include ownership interests, direct and/or indirect, in more than two dozen different companies with significant if not substantial assets in the form of real property, apartments, rent, management fees and other assets. Exh. 1 at Count I; *see also*, Exhs. 41-42.

With respect to Plaintiffs' claim pursuant to Section 523(a)(2)(B), the requisite elements are the "use of a statement in writing – (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B). Plaintiffs have clearly pled an actionable claim pursuant to Section 523(a)(2)(B) in Count II of their Complaint which contains the following allegations, among others, which satisfy the elements of Section 523(a)(2)(B).

- Lewiston used the tax returns and K-1 forms, along with his memoranda dated April 20, 2010, June 15, 2010 and August 25, 2010, to convey to Plaintiffs the impression that: (a) Lewiston was properly running the companies in which Plaintiffs maintain ownership interests with Lewiston; and (b) the intercompany loans on the companies' books and records were legitimate.

- The tax returns, K-1 forms and Lewiston's memoranda were materially false because they reflected so-called intercompany loans as good and proper loans even though such loans, in reality, were the funds that Lewiston diverted for his or his family's own benefit and from other companies or entities in which Plaintiffs did not have an interest.

- The tax returns, K-1 forms and Lewiston's memoranda therefore misrepresented

16

Lewiston's financial condition and that of the companies in which Plaintiffs maintain ownership interests with Lewiston, all of which were Lewiston's alter egos and were insiders by definition pursuant to 11 U.S.C. § 101 in any event.

- Plaintiffs reasonably relied upon the tax returns, K-1 forms and Lewiston's memoranda by virtue of the fact that: (a) they were representations by Lewiston to the federal and state governments; and (b) by virtue of the of the parties' longstanding personal and business relationship.

- Lewiston issued the tax returns, K-1 forms and memoranda with the intent to deceive Plaintiffs for the purpose of preventing Plaintiffs from discovering, pursuing relief and obtaining relief for Lewiston's diversion of the funds that are owed Plaintiffs that Lewiston diverted for his and his family's benefit. Exh. 1 at Count II.

With respect to Plaintiffs' claim pursuant to Section 523(a)(4) for embezzlement and fraud or defalcation while acting in a fiduciary capacity, the legal elements are as follows:

> Federal law defines 'embezzlement' under § 523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud. *In re Brown*, 442 B.R. 585, 618-619 (Bankr. E.D. Mich. 2011), *quoting, In re Stollman*, 404 B.R. at 271 (*quoting, In re Brady*, 101 F.3d 1165, 1172-1173 (6th Cir. 1996).

A debtor must hold funds in an express or technical trust to satisfy a claim for fraud or defalcation under Section 523(a)(4). *See, In re Noblit*, 327 B.R. 307, 310 n.2 (Bankr. E.D. Mich. 2005), *citing, In re Garver*, 116 F.3d 176, 179 (6th Cir. 1997).

Plaintiffs have clearly pled an actionable claim pursuant to Section 523(a)(4) in Count III of their Complaint based upon their allegations, among others, that Lewiston had been running the companies in which Plaintiffs maintain ownership interests with Lewiston as his alter egos, completely disregarding the company forms and agreements, and treating such companies as his own personal piggy banks where he consistently issued checks without authorization for his or

17

his family's own benefit. *See*, Exh. 1 at Count III. Indeed, Plaintiffs have alleged and provided substantial documentation that Lewiston diverted millions of dollars from the companies in which Plaintiffs invested instead of properly holding such funds in trust and distributing such funds to Plaintiffs. *Id.*; Exhs. 1-42.

With respect to Plaintiffs' claim pursuant to Section 523(a)(6) for willful and malicious injury, the legal elements are as follows:

> 'Willful' means that a debtor must 'intend the consequences of an act,' *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62; 118 S. Ct. 974; 140 L. Ed. 2d 90 (1998), or 'believe[ ] that the consequences are substantially certain to result . . . .' *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 580 (6th Cir. 2001) (citations omitted). 'Malice' for purposes of § 523(a)(6) means 'without just cause or excuse.' *Tinker v. Colwell*, 193 U.S. 473, 485-86; 24 S. Ct. 505; 48 L. Ed. 754 (1904) (internal quotation marks and citation omitted). Alternately, malice has been defined as 'act[ing] in conscious disregard of [one's] duties . . . .' *Qui v. Zhou (In re Zhou)*, 331 B.R. 274, 277 (Bankr. E.D. Mich. 2005) (*citing Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (B.A.P. 6th Cir. 2000) and *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004)). *In re Brown*, 442 B.R. at 620.

Plaintiffs have clearly pled an actionable claim pursuant to Section 523(a)(6) in Count IV of their Complaint based upon their foregoing allegations which are supported by substantial evidence even at this early stage of discovery. *See*, Exh. 1 at Count IV; Exhs. 1-42. In sum, Plaintiffs' Complaint more than satisfies the pleading requirements which Lewiston has waived as a matter of law in any event. Further, substantial and genuine questions of material fact have been raised even at this early stage which, on their face, require denial of Lewiston's motion for summary judgment.

## IV. PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED.

Lewiston generally contends that Plaintiffs' claims should be barred to the extent of any

18

applicable statutes of limitations. However, Lewiston's argument transparently ignores the fact that his contention has no effect on Plaintiffs' damages claim of at least $10,511,022. Specifically, Plaintiffs allege that, for each and every year of the six years preceding Lewiston's voluntary bankruptcy petition, Lewiston falsely represented the funds that he diverted as intercompany loans:

> For the years 2006 forward, the tax returns and K-1 forms prepared for the companies in which Plaintiffs maintain ownership interests with Lewiston reflected so-called intercompany loans which, in reality, were the funds that Lewiston diverted for his or his family's own benefit. Exh. 1 at ¶¶ 33(B), 43, 63(B).

These allegations are based upon and confirmed by the Independent Expert Report submitted in the Smith Action. *See*, Exh. 40.

Therefore, Plaintiffs' allegations set forth a separate cause of action for their damages each and every year preceding Lewiston's bankruptcy by virtue of Lewiston's falsely representations each year as to intercompany loans which were actually the funds that he diverted. In other words, it is immaterial whether a three- or six-year statute of limitations is applied because, as set forth in Plaintiffs' Complaint and in the Sections above, Lewiston's tortious conduct persisted each and every year in hiding and misrepresenting the diverted funds belonging to Plaintiffs as intercompany loans.

## II.    LEWISTON'S MOTION IS PREMATURE.

As the Court is aware, this case is in the early stages of discovery with the Trustee having recently been permitted to intervene and having filed a joint motion with Plaintiffs to consolidate discovery in this case. Furthermore, pursuant to Rule 56(d), Plaintiffs have attached the affidavit of their expert witness explaining that Lewiston has failed to produce substantial material evidence which is necessary in order to verify and ascertain the amount of Plaintiffs' damages

inasmuch as his Expert Report was based upon the limited information that Lewiston was required to produce in the Smith Action. *See*, Exh. 43. Therefore, in the event that this motion is not denied outright, the motion is premature and should not be ruled upon until discovery has been completed in this case.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny the instant motion in its entirety and award to Plaintiffs all costs and attorney fees incurred in being forced to defend against it. A proposed order is attached hereto as Exhibit 44.

Respectfully submitted,

| MORGANROTH & MORGANROTH, PLLC | SULLIVAN, WARD, ASHER & PATTON, P.C. |
|---|---|
| By: /s/ Daniel E. Harold | By: /s/ Wallace M. Handler |
| MAYER MORGANROTH (P17966) | WALLACE M. HANDLER (P14598) |
| DANIEL E. HAROLD (P61841) | Of counsel to Plaintiffs |
| Counsel for Plaintiffs | 1000 Maccabees Center |
| 344 North Old Woodward Avenue, Suite 200 | 25800 Northwestern Highway |
| Birmingham, Michigan 48009 | Southfield, MI 48075-1000 |
| (248) 864-4000 | (248) 746-0700 |
| dharold@morganrothlaw.com | whandler@swappc.com |

Dated: August 1, 2013